[No. A070189. First Dist., Div. Two. July 16, 1996.]

In re DONATO ESTRADA on Habeas Corpus.

**COUNSEL**

Leonard E. Oldwin, Jr., and David Stanley, under appointments by the Court of Appeal, for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Peter J. Siggins, Assistant Attorney General, Morris Lenk and Allen R. Crown, Deputy Attorneys General, for Respondent.

## OPINION

**PHELAN, J.**[*]—Respondent Donato Estrada was found guilty of a prison rules violation (Cal. Code Regs., tit. 15, § 3005, subd. (c))[1] for conspiring to commit battery on an inmate named Gaspar, based solely on information supplied by confidential informants. After exhausting his administrative remedies, he petitioned the superior court for a writ of habeas corpus challenging the use of confidential information in his disciplinary hearing. The court issued an order to show cause and eventually granted the petition, directing that the disciplinary finding be set aside and ordering the restoration of sentencing credits, if any. The People appeal from the order granting the writ petition (Pen. Code, § 1506), contending that the use of the confidential information was entirely proper and respondent was not denied due process. We conclude that respondent had adequate notice of the charges to prepare a defense, and we reverse the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 1993, a rules violation report (CDC Form 115) charged respondent with conspiracy to commit battery upon an inmate. That report alleged that on April 11, 1993, while inmate Gaspar was lifting weights in the yard, a weight fell on his face severely injuring him. Respondent and another inmate named Luna were suspected of the assault and placed in administrative segregation. It was further alleged that correctional officer C.D. Masters investigated the incident and learned through several confidential sources that respondent and Luna were involved. Officer Masters filed a confidential report of his investigation.

At the time of the charges, respondent was serving a 17-year-to-life sentence for second degree murder. (Pen. Code, § 187.) He received a copy of the CDC Form 115 and denied the charges. He told investigating officer L.R. Navarro that he was playing basketball with other inmates at the time of the assault. Four witnesses interviewed by Navarro confirmed the fact that respondent was playing basketball at that time. Several of these witnesses represented that such assaultive behavior was contrary to respondent's character because he was known as a "peacemaker" among the inmates. The victim, Gaspar, refused to comment on the record.

Respondent also demanded that the investigating officer supply him with "the date, the time, and the place where the conspiracy occurred that I am

---

[*]Presiding Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All further references are to title 15 of the California Code of Regulations, the September 15, 1994, version, unless otherwise indicated.

being accused of. I wish to have as a witness Inmate Luna, . . . and also I need to verify all the statements of the inmates that were on the weightpile and basketball court interviewed by Officer Vaca in the dining hall after the incident occurred." Except for the facts alleged in the CDC Form 115, respondent was not given other details of the offense.

Respondent also received a copy of the confidential information disclosure (CID) form, notifying him that confidential informants reported that he was "involved in a conspiracy to commit battery on an inmate," and that the identity of the sources could not be disclosed without endangering their safety or the security of the prison. The CID form also alleged that this information was deemed reliable because: "This source has previously provided confidential information which has been proven to be true," and "[m]ore than one source independently provided the same information."

A disciplinary hearing was held on June 8, 1993, and respondent was found guilty of the charge. Respondent was present, but declined to present any witnesses. The disciplinary officer assessed respondent 90 days' loss of custody credits, and 10 days of disciplinary detention.

The disciplinary finding and penalty were later set aside and a rehearing was ordered under an amended complaint charging respondent with conspiracy to commit battery on an inmate, *with great bodily injury*, based on these same facts.[2] The rehearing was held on January 4, 1994, and again respondent was found guilty based on the same evidence. At that hearing, respondent admitted speaking to Gaspar about the incident and was told by Gaspar that weights had fallen on him. He also introduced Luna's statement in which Luna vouched for respondent's reputation as a peacemaker, and asserted that the charges were fabricated. The hearing officer expressly determined: "subject found guilty based upon a preponderance of evidence

---

[2]As originally alleged, respondent was charged with a category "D-6" offense, which the prison regulations in effect at that time defined as "Battery on a prisoner." (§ 3323, subd. (g)(6).) Division D offenses carried a credit loss of 61 to 90 days. (§ 3323, subd. (g).) It would have been more proper to have charged him under section 3323, subdivision (g)(8), "Conspiracy to commit any Division 'D' offense." Respondent alleges, without contradiction, that he was informed that the offense was changed from a D-6 to a more serious "A-1" violation. Division A-1 offenses provide for credit loss from 181 to 360 days. (§ 3323, subd. (c).) The only related division A-1 offense is: "(c)(3) Assault or battery causing serious bodily injury." But that charge would have been improper, as he was not charged with being the perpetrator. It seems more likely that he was re-charged with a division A-2 offense, which penalizes conspiracy to commit any division A-1 or A-2 offense. (§ 3323, subd. (d)(7).) A division A-2 offense provides for credit loss of 151 to 180 days. (§ 3323, subd. (d).) This is all conjecture since CDC Form 115 was never revised to indicate a change from the original D-6 offense. We have no doubt that any clerical error in this regard was de minimus and did not interfere with respondent's rights in any way.

which substantiate [*sic*] the charge. This evidence includes the written report. Inmate Estrada's witnesses stated that he did not have knowledge of the incident until later, yet Estrada himself states that he spoke with Gaspar after the incident. This appears to put the credibility of the witnesses in question." No credit loss was assessed, presumably because he was serving a 17-year-to-life sentence, but his 10-day disciplinary detention penalty was affirmed, with credit for time served.

On April 22, 1994, respondent was transferred to Folsom State Prison. He appealed the disciplinary ruling contending that his due process rights were violated because: (1) he did not receive the CDC Form 115 within 15 days of discovery of the offense as required by the prison regulations (§ 3320, subd. (c)(1)); and (2) the confidential information was not reliable. On June 17, his administrative appeal was denied.

In his writ petition respondent alleged that he was denied minimal due process because he was not given adequate notice of the charges, he was not supplied with any documentation to support the allegations, nor was he allowed to present witnesses. Specifically, he cited the Supreme Court case of *Wolff* v. *McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935, 94 S.Ct. 2963], claiming that the notice did not provide him with a "chance to marshal the facts in his defense and to clarify what the charges are, in fact." (*Id.* at p. 564 [41 L.Ed.2d at p. 955].) He also alleged that there was insufficient evidence of the reliability of the informants, and that the disciplinary hearing officer failed to follow prison regulations (§ 3321, subd. (b)(1)), which required that officer to personally determine the reliability of the confidential informants. Finally, he asserted that the uncorroborated statements by confidential informants were insufficient to support the guilt finding.

In his return to the petition, the Attorney General argued that respondent had sufficient notice of the charges and adequate knowledge with which to prepare his defense. The Attorney General asserted that the CID form supplied respondent with all the confidential information to which he was entitled, and that the reliability of the informants was sufficiently proved.

Respondent's traverse reasserted his claims that he was not given adequate notice "as to who he had allegedly conspired with; where the conspiracy took place; when the conspiracy took place; what his roll [*sic*] in the conspiracy was; what was actually conspired or the names of his accusers." He also alleged the evidence was insufficient to prove that the confidential informants were reliable, and that there was insufficient evidence of his guilt.

The trial court granted the writ petition "on the *sole* ground that petitioner was not afforded the process to which he was due because he was not given

adequate notice of the charges brought against him as to who, what, when, and where the petitioner's involvement in the conspiracy consisted of, as required by *Wolff* v. *McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935, 94 S.Ct. 2963]." (Italics added.) The court did not review the confidential information supplied to the hearing officer.[3]

Both parties recognize that in a disciplinary hearing based on confidential material, an inmate has a due process right to be apprised of information which forms the basis of the charged rules violation. (*Wolff* v. *McDonnell*, *supra*, 418 U.S. at p. 564 [41 L.Ed.2d at p. 955].) Respondent argued successfully below that the charging papers did not adequately apprise him of the essential details of the conspiracy in order that he might prepare his defense.

On appeal, the People maintain that respondent was provided with sufficient information with which to prepare a defense, and that providing any other information would have risked revealing the identification of the confidential source or sources. The People emphasize that respondent was informed of the victim's identity, the date of the assault, the location of the assault, the nature of the victim's injuries, the fact that another inmate (Luna) was also placed in administrative segregation, and the fact that confidential reliable information was received. Respondent was also provided with an investigative employee (Navarro) to obtain statements of witnesses.

The trial court's order has narrowed this dispute to the issue of how much confidential information, if any, should have been disclosed to satisfy the due process requirement of adequate notice.

DISCUSSION

I.

■ It is well settled that although a prisoner enjoys certain due process rights in a disciplinary hearing, "the fully panoply of rights due a defendant in [criminal] proceedings does not apply. [Citation.]" (*Wolff* v. *McDonnell*, *supra*, 418 U.S. at p. 556 [41 L.Ed.2d at p. 951].) The exact nature of the procedural safeguards that are constitutionally compelled depends on a balancing of the prisoner's "liberty" interest (e.g., loss of good time credits or avoidance of disciplinary detention) with the legitimate institutional needs and objectives of the prison. (*Ibid.*) With these competing concerns in mind,

---

[3]In his return, the Attorney General offered to provide the trial court with the confidential material. The record is silent as to why the trial court did not ask for this material.

the *Wolff* court held that an inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. [Citation.]" (*Superintendent* v. *Hill* (1985) 472 U.S. 445, 454 [86 L.Ed.2d 356, 364, 105 S.Ct. 2768], quoting *Wolff, supra*, 418 U.S. at pp. 563-567 [41 L.Ed.2d at pp. 954-957]; *Young* v. *Kann* (3d Cir. 1991) 926 F.2d 1396, 1399; *Zimmerlee* v. *Keeney* (9th Cir. 1987) 831 F.2d 183, 186.)

Following *Wolff*, our Supreme Court in *In re Jackson* (1987) 43 Cal.3d 501 [233 Cal.Rptr. 911, 731 P.2d 36], approved the constitutionality of the current disciplinary regulations and their treatment of confidential material, e.g., sections 3315, 3320-3323 (43 Cal.3d at pp. 511, 515.) The *Jackson* court held that federal and state due process guarantees require that the record contain evidence demonstrating that the hearing officer personally determined the credibility and reliability of the confidential informants, but that there is no constitutional requirement that the hearing officer must conduct an in camera review of confidential informants. (*Id.* at pp. 504, 515-516.) The court emphasized that "in a case in which such information is the sole basis for imposing disciplinary sanctions, the regulation requires the hearing officer personally to make a reliability and truthfulness finding, and therefore—as almost every other court recently addressing the issue has held—the disciplinary record must contain information (confidential or otherwise) from which a reviewing court can conclude the hearing officer actually made a reliability and truthfulness determination, and that the determination is supported by evidence. [Citations.]" (*Id.* at pp. 515-516; see also *Superintendent* v. *Hill, supra*, 472 U.S. at pp. 454-456 [86 L.Ed.2d at pp. 363-365] [disciplinary finding revoking custody credits must be supported by some evidence, but not necessarily "substantial" evidence].)

Regarding the use of confidential information, section 3321, subdivision (b), provides that no disciplinary finding can be based on confidential information unless other written information corroborates the informant or "unless the circumstances surrounding the event and the documented reliability of the source satisfies the decision maker(s) that the information is true." (§ 3321, subd. (b)(1).) The regulations also direct that to the extent possible without disclosing the informant's identity, prison officials must disclose: the confidential information relied upon, together with an evaluation of the source's reliability; a brief statement explaining why the informant was found reliable; and a statement of reasons explaining why the source or information was not disclosed. (§ 3321, subd. (b)(2)(B); see also *In re Jackson, supra*, 43 Cal.3d at p. 512.)

## II.

 There is no due process right to confront or to cross-examine the confidential informants (see *Wolff* v. *McDonnell, supra,* 418 U.S. at pp. 568-569 [41 L.Ed.2d at pp. 957-959]) or to be informed of their identities (*Henderson* v. *U.S. Parole Com'n* (7th Cir. 1994) 13 F.3d 1073, 1078).

 Here, prison officials presented respondent with a CID form, which provided no details of the offense other than to state that confidential sources reported "that you were involved in a conspiracy to commit battery on an inmate." The form also indicated the reasons why prison officials believed the information was reliable and their belief that if this information was released, it would endanger the safety of the informants or jeopardize the security of the institution.

 To sustain a charge of conspiracy, it must be shown that the conspirators intended to agree or to conspire, and intended to commit the offense which is the subject of the conspiracy. It also must be established that one or more of the parties to the conspiracy committed an overt act in furtherance of the conspiracy. (Pen. Code, § 182; *People* v. *Lopez* (1993) 20 Cal.App.4th 897, 904 [24 Cal.Rptr.2d 649].) We have reviewed the record, including the confidential report, and are satisfied that the evidence therein is sufficient to sustain the charge, that the hearing officer personally made a reliability determination of the informants' credibility, and that there is evidence to support that determination. (See *In re Jackson, supra,* 43 Cal.3d at p. 512.) We now turn to the order on appeal.

## III.

Typically, when an inmate complains of lack of adequate notice, CDC Form 115 provides scant details of the offense. In such cases, the reviewing court must then review the entire record to determine if the prison officials stated justifiable security reasons for not disclosing the requested confidential information. (See, e.g., *Smith* v. *Rabalais* (5th Cir. 1981) 659 F.2d 539, 542-543 [inmate alleged the written notice was so vague as to preclude a defense]; *Spellmon-Bey* v. *Lynaugh* (E.D.Tex. 1991) 778 F.Supp. 338, 342-343 [notice did not allege specific criminal acts and no time nor place was given].) Here, the information contained in the CDC Form 115 adequately apprised respondent of sufficient details of the offense to enable him to marshal the facts and prepare his defense. (See *Zimmerlee* v. *Keeney, supra,* 831 F.2d at p. 188 [notice provided inmate with specific acts and dates].) In these circumstances, respondent has no cause to complain.

The charging disciplinary petition informed respondent of the victim's identity, the date of the attack, the nature of the injuries, and the fact that

prison officials had confidential information from separate sources that respondent was part of a conspiracy to commit the battery on Gaspar. The CDC Form 115 also alleged that Luna was suspected of taking part in the battery. From this, respondent could reasonably infer that prison officials believed that he had conspired with Luna to commit the battery. Viewed in its entirety, this information provided sufficient detail of the offense to enable respondent to present alibi or defense witnesses.

Knowing the time of the attack, respondent was able to produce alibi witnesses who stated that he was seen playing basketball at that time. Once he was aware of the victim's identity, respondent could have chosen to, but did not, introduce evidence showing that there was no animosity between him and Gaspar to warrant the attack. Knowing that Luna was suspected of being the assailant and a coconspirator, respondent had the opportunity to call Luna as a witness at the disciplinary hearing to deny that they entered into any agreement to injure Gaspar. However, respondent declined to call any witnesses on his behalf. Respondent instead defended against the charge by suggesting that he had no motive for the attack since to do so would be out of character. The assigned investigative employee interviewed witnesses, including Luna, who all gave statements vouching for respondent's nonviolent character and reputation as a peacemaker among the inmates. Luna further stated that respondent was not involved in the attack, asserting that the accusations were fabricated by inmates who wanted him out of the yard. However, Luna never volunteered the names of any of these inmates, or why he believed others had it "in" for respondent. Respondent did not call Luna to testify on this issue at the hearing. Short of cross-examination of the confidential informants, which he concedes he was not entitled to conduct, respondent had ample information with which to rebut the charge.

Following a review of the record, and especially Officer Master's confidential report, we are convinced that to have revealed any further information as to the reason behind the conspiracy, and additional confidential information which connected respondent to the crime would create a serious risk of harm to the informants and to the security of the institution. (See *In re Jackson, supra,* 43 Cal.3d at p. 507.) ■ It must be remembered that due process "itself is a flexible concept, which, in the context of a prison, must take account of the legitimate needs of prison administration when deciding what procedural elements basic considerations of fairness require. [Citations.]" (*Sandin* v. *Conner* (1995) 515 U.S. __, __ [132 L.Ed.2d 418, 442, 115 S.Ct. 2293, 2309]; *Wolff* v. *McDonnell, supra,* 418 U.S. at p. 560 [41 L.Ed.2d at p. 953].) ■ On this record, we conclude that respondent had sufficient detailed information to marshal facts and to prepare an adequate defense to the charge, and that the minimum due process requirements requiring notice of the charges were met. The refusal to produce any

additional confidential information as to the date, time, place of the conspiracy, and what was said among the coconspirators, was reasonable in light of the practical concerns of inmate safety and prison security. Accordingly, we conclude respondent had adequate notice of the charges against him and the trial court erred in granting his habeas corpus petition.

We caution that in order to give substance to the minimal due process requirements outlined above, and to preserve the purpose behind the confidential disclosure regulations contained in section 3321, subdivision (b), the correctional authorities must prepare as thorough a confidential report as is prudent, keeping in mind the risks of harm to inmates and institutional security. Such a procedure will help to ensure that trial and appellate courts can undertake a meaningful review of evidence against the accused inmate. Depending on the totality of the circumstances, the hearsay statements of proven confidential sources may be sufficient to connect the accused inmate with the prison offense. But in other situations such hearsay statements, by themselves, may not be worthy of belief. Whenever possible, the confidential report should describe those prior events where the confidential source had proven reliable, together with any known biases for or against the accused inmate or his friends. It is not unreasonable to envision a scenario where rivalries and animosities among individuals or groups of inmates could motivate one faction to concoct crimes or institutional rule violations as a form of payback or intimidation. To guard against such risks, the hearing officer, and later the courts when reviewing a habeas corpus petition, must be able to satisfy themselves that sufficient evidence exists to show that the confidential sources are reliable.

We also encourage the hearing officer to closely adhere to the spirit behind the regulations in section 3321, subdivision (b), and to require the investigating officer (in camera if necessary), to supply additional information where it is determined that proof of prior reliability is lacking, or if a question arises as to the possible biases of the witnesses. The reporting officer should keep in mind when preparing the confidential report that the information contained therein may be considered not only by the disciplinary hearing officer, but also by the courts, and that these courts should not be expected to possess the detailed knowledge of prison life, with its attendant problems and pitfalls, surrounding a rules violation investigation.

We reiterate that the confidential report presented here satisfied these concerns.

IV.

Respondent argues that the notice provided in the CDC Form 115 deprived him of due process in violation of Penal Code section 2932, subdivision (c)(1)(A), which provides in relevant part: "The written notice shall include *the specific charge, the date, the time, the place that the alleged misbehavior took place*, the evidence relied upon, a written explanation of the procedures that will be employed at the proceedings and the prisoner's rights at the hearing." (Italics added.)

As discussed above, the requirements of due process are not inflexible, but they vary depending on the " 'nature of the government function involved as well as the private interest that has been affected by governmental action.' [Citations.]" (*Wolff* v. *McDonnell, supra,* 418 U.S. at p. 560 [41 L.Ed.2d at p. 953].) It is evident on its face that this statute codifies a prisoner's due process right to receive adequate notice of the disciplinary charges. As such, it is subject to the balancing of considerations that the due process clause demands. In other words, the implementation of the statute is subject to the legitimate administrative and security needs of the institution. With this in mind, we conclude that the use of the mandatory term "shall" in the statute does not, itself, create a right in the prisoner to receive all information of the charge, confidential as well as nonconfidential. This was the holding in the similar case of *Sandin* v. *Conner, supra,* 515 U.S. at page __ [132 L.Ed.2d at pages 429-430, 115 S.Ct. at page 2300].

In *Sandin*, the high court held that the determination of whether a prison regulation created a liberty interest is no longer based on the characterization of the statutory language as mandatory or discretionary, but depends on whether the inmate is subject to "atypical and significant hardship" compared to the ordinary incidents of prison life. (*Sandin* v. *Conner, supra,* 515 U.S. at p. __ [132 L.Ed.2d at pp. 429-430, 115 S.Ct. at p. 2300]; *Kennan* v. *Hall* (9th Cir. 1995) 83 F.3d 1083, 1088.) While factually distinguishable, we read *Sandin* as affirming the concept announced in *Wolff*, that prison regulations cannot be read in a vacuum, but that they must be construed with the competing interests of the inmate and the institution in mind. (See *Sandin* v. *Conner, supra,* 515 U.S. at p. __ [132 L.Ed.2d at pp. 429-430, 115 S.Ct. at p. 2300].)

When viewed in this light, the CDC Form 115 adequately informed respondent of the charges. The charging petition set forth the date, time, and place of the attack on Gaspar, and also suggested that Luna was the assailant. Further information of respondent's involvement was properly protected as being confidential.

## DISPOSITION

The order granting the petition for habeas corpus is reversed.

Smith, Acting P. J., and Haerle, J., concurred.

A petition for a rehearing was denied August 5, 1996, and petitioner's application for review by the Supreme Court was denied November 20, 1996.