[No. A104121. First Dist., Div. Four. July 28, 2004.]

In re JAYSON WAYNE DIKES, on Habeas Corpus.

**Counsel**

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Jennifer A. Neill and Pamela B. Hooley, Deputy Attorneys General, for Appellant State of California.

L. Richard Braucher, under appointment by the Court of Appeal, for Respondent Jayson Wayne Dikes.

**Opinion**

**RIVERA, J.**—After a prison disciplinary hearing, Jayson Wayne Dikes was found to have possessed a controlled substance in violation of prison regulations, based on a positive urinalysis test. He petitioned the superior court for a writ of habeas corpus, challenging the drug test as insufficient evidence to sustain a finding of possession. The court agreed and granted the petition, directing that the disciplinary finding be set aside and ordering the restoration of good time credits. The warden appeals, contending that the drug test satisfied the "some evidence" standard of proof required for prison disciplinary actions. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND AND PROCEDURAL HISTORY

Dikes was convicted November 14, 2001, for violations of Health and Safety Code section 11379.6, subdivision (a) and Penal Code section 4573,

both drug-related offenses, and sentenced to serve eight years in state prison. On April 28, 2002, while incarcerated at California State Prison, Solano, Dikes provided a urine sample to prison authorities as part of the prison substance abuse program's random drug testing policy. The sample tested positive for a controlled substance, THC (cannabinoids). Based on the positive test, the warden brought a disciplinary action against Dikes, charging him with possession of a controlled substance in violation of California Code of Regulations, title 15, section 3016, subdivision (a[1]). The possession charge was sustained and Dikes was assessed a 130-day credit loss. Dikes's administrative appeals were denied.

On November 25, 2002, Dikes filed a petition for writ of habeas corpus in Solano County Superior Court. The superior court granted the writ, concluding that a positive urinalysis test was insufficient evidence to sustain the disciplinary charges against Dikes and ordering reversal of Dikes's guilty finding. This timely appeal ensued.

## II. DISCUSSION

A. *Due Process and the "[S]ome [E]vidence" Standard*

The Legislature has granted the Department of Corrections[2] broad authority for the discipline of inmates in state prisons (Pen. Code, § 5054), including the authorization to promulgate regulations governing discipline. *(In re Scott* (2003) 113 Cal.App.4th 38, 44 [5 Cal.Rptr.3d 887] *(Scott).)* A good time credit is a prospective benefit that depends on the inmate's sustained good behavior and is subject to review and withdrawal for cause by the disciplinary board. While the Department cannot interpret regulations arbitrarily or capriciously, it does not abuse its discretion when it has some basis in fact for its decision. *(Ibid.)* An administrative agency must be granted "broad discretion and not be 'subject to second-guessing upon review.' [Citation.]" *(In re Powell* (1988) 45 Cal.3d 894, 904 [248 Cal.Rptr. 431, 755 P.2d 881].) A prison disciplinary action must be supported by "some evidence" *(Superintendent v. Hill* (1985) 472 U.S. 445, 447 [86 L.Ed.2d 356, 105 S.Ct. 2768] *(Hill));* and on review, we must uphold any Department decision that is "supported by ' "some evidence" ' " *(Scott, supra,* 113 Cal.App.4th at p. 44).

Due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits. *(Wolff v.*

---

[1] All further undesignated references are to title 15 of the California Code of Regulations.

[2] The respondent below (and appellant here) was the warden, Tom L. Carey. Dikes's final administrative appeal was denied by the Inmate Appeals Branch of the California Department of Corrections. For the sake of convenience, we will refer to appellant here and the Department of Corrections collectively as the Department.

*McDonnell* (1974) 418 U.S. 539, 556–557 [41 L.Ed.2d 935, 94 S.Ct. 2963].) In *Wolff,* the court held that before being stripped of good time credits, an inmate must receive certain minimum due process protections, including written notice of the claimed violation, an opportunity to be heard and to call witnesses unless doing so would jeopardize prison security, and a written statement detailing evidence relied on and reasons for the disciplinary action. (*Id.* at pp. 563–567.) However, *Wolff* also acknowledged that the inmate's due process interest must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." (*Id.* at p. 561.) Prison disciplinary proceedings are not part of a criminal prosecution, and the "full panoply of rights" due a defendant in such proceedings does not apply. (*Id.* at p. 556.) As a result, the standard courts apply in reviewing disciplinary proceedings is lower than that applied in reviewing criminal convictions.

▆ In *Hill, supra,* 472 U.S. at page 454, the United States Supreme Court held that the requirements of due process in a prison disciplinary action are satisfied if "some evidence" supports the decision by the prison disciplinary board to revoke good time credits. In determining whether the evidentiary standard is satisfied, the relevant question is whether there is "any" evidence in the record that could support the conclusion reached by the disciplinary board. (*Id.* at pp. 455–456.) The determination does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. (*Id.* at p. 455.) Provided "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," due process does not require courts to set aside decisions of prison administrators. (*Id.* at p. 457.) "Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." (*Id.* at p. 455.)[3]

The *Hill* court resisted adopting a more stringent evidentiary standard as a constitutional requirement because prison disciplinary proceedings take place in a highly charged atmosphere, and it is often necessary for prison administrators to act promptly on the basis of evidence that might be insufficient in less taxing circumstances. (*Hill, supra,* 472 U.S. at p. 456.) California cases

[3] The issue for the court in *Hill* was whether the findings of a prison disciplinary board that resulted in loss of good time credits must be supported by "some evidence." There, the board heard testimony and received a written report from a prison guard, stating he heard a loud voice, saw an inmate with injuries to the mouth and eye, and dirt strewn about; he then observed three inmates jogging away together, with no other inmates present in the area. (*Hill, supra,* 472 U.S. at pp. 447–448.) The court upheld the assault charges against the inmates observed fleeing from the injured inmate, describing the evidence presented as "meager," but sufficient. (*Id.* at p. 457.)

have also applied this rule. (See *In re Jackson* (1987) 43 Cal.3d 501, 510 [233 Cal.Rptr. 911, 731 P.2d 36] ["disciplinary findings need not be supported by substantial evidence, but merely 'some' or 'any' evidence"]; see also *Scott, supra,* 113 Cal.App.4th at p. 44; *In re Estrada* (1996) 47 Cal.App.4th 1688, 1695 [55 Cal.Rptr.2d 506].)

## B. *The Positive Drug Test as "[S]ome [E]vidence" of Possession*

■ Dikes was found guilty of possession of a controlled substance, in violation of section 3016, subdivision (a), which prohibits inmates from introducing into their body, possessing, or having under their control any controlled substance, except as authorized by the facility's health care staff.

Dikes contends that the THC-positive urinalysis result, standing alone, is insufficient evidence to support the Department's finding that he possessed a controlled substance.[4] He relies on *People v. Spann* (1986) 187 Cal.App.3d 400, 408 [232 Cal.Rptr. 31] (*Spann*), which held that " '*possession*[]' . . . does not mean 'use' and mere evidence of use (or being under the influence) of a proscribed substance cannot circumstantially prove its '*possession.*' " The defendant in *Spann* was a jail inmate. A correctional officer observed him behaving in a manner consistent with being under the influence of an illicit substance, and ordered a blood sample to be drawn. The sample tested positive for Valium, a controlled substance. This evidence was used to prove Spann possessed the unauthorized narcotic in violation of Penal Code section 4573.6, and he was sentenced to state prison. (*Spann*, at p. 402.) The Court of Appeal reversed on the ground that "mere evidence of use" of a proscribed substance cannot circumstantially prove its possession. (*Id.* at pp. 408–409.)

■ The issue here is not whether evidence of a controlled substance in Dikes's urine is sufficient to support the burden of proof in a criminal conviction, but rather whether the THC in his urine sample is "some" or "any" evidence that he had possessed marijuana in violation of prison rules. (See *Hill, supra,* 472 U.S. at pp. 455–456.)[5] Although evidence of drug use is not by itself sufficient to support a criminal conviction for possession, our Supreme Court has acknowledged that "evidence of being identifiably under the influence of

---

[4] Dikes argued below that the methods employed at the disciplinary hearing violated his constitutional due process rights. He does not argue on appeal that the trial court's ruling should be affirmed on those grounds; and accordingly, we do not consider the issue here.

[5] The Department has asked us to take judicial notice of a 1992 unpublished Department administrative bulletin. This document was apparently not submitted to the trial court, and the copy submitted to us was not authenticated. The bulletin discussed the " 'some' evidence" standard in proving possession, and cited an unpublished case from the Fourth District Court of Appeal. We deny the request. (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493, 495 [138 Cal.Rptr. 828] [Court of Appeal will not take judicial notice of documents not presented to and considered by the trial court, or documents not properly certified].)

a specific drug or other evidence of having introduced it into one's body tends to prove having knowingly, and hence unlawfully, possessed it." (*People v. Morales* (2001) 25 Cal.4th 34, 44 [104 Cal.Rptr.2d 582, 18 P.3d 11].) While it is possible to ingest a controlled substance without the knowledge, dominion and control necessary to sustain a criminal conviction (see *People v. Palaschak* (1995) 9 Cal.4th 1236, 1241 [40 Cal.Rptr.2d 722, 893 P.2d 717] (*Palaschak*)), we conclude the presence of THC in Dikes's body is some evidence to sustain the finding that he possessed it.

Dikes contends this result is inconsistent with the statutory and regulatory scheme. He points out that use and possession of controlled substances are treated differently by state law (see Health & Saf. Code, §§ 11550, 11377, subd. (a)),[6] and that the regulations of the Department likewise treat use and possession of controlled substances differently (see, e.g., § 3315, subd. (a)(3)(E), (3)(F).) Furthermore, section 3016 cites as authority the Health and Safety Code (§§ 11014.5, 11350–11383) and the Penal Code (§§ 5054, 5058, 2931, 4573, 4573.6). According to Dikes, these references, combined with the lack of a separate definition of "possess" in section 3016, indicate that possession under section 3016 was never intended to carry a different connotation than that set forth in the criminal statutes, which require knowledge, dominion and control of the substance, and should therefore be treated no differently. (*Palaschak, supra*, 9 Cal.4th at p. 1242.) Moreover, Dikes contends the Department's definition of possession is "so violently at odds with preexisting statutory and regulatory authority" that it results in a violation of due process by failing to put him on notice that a positive test for a controlled substance would be punished as possession.[7]

■ We find these arguments unpersuasive. The Department's regulations provide: "The test results from a urine sample submitted for testing for the presence of an unauthorized controlled substance that has been confirmed as positive by a laboratory may be considered as sufficient evidence to charge the user with having had possession of the controlled substance." (§ 3290, subd. (f).) This provision indicates to us both that the Department's

---

[6] For example, use of a controlled substance is a misdemeanor (Health & Saf. Code, § 11550), while possession may be a felony (Health & Saf. Code, § 11350).

[7] Dikes shores up his due process claim by pointing out that the credit forfeiture schedule is vague in that it provides for different sanctions for possession (121 to 150 days) (§ 3323, subd. (d)(6)), versus refusing to provide a urine sample (61 to 90 days) (§ 3323, subd. (f)(1)), with no section specifying credit forfeiture for use. Dikes contends this scheme allows for absurd results, in that an inmate who knowingly used a controlled substance would simply refuse to provide a urine sample, since the consequences of a positive test meant he would be punished for the more serious violation of possession. We need not address this argument because the Department has agreed the credit loss should be no more than 30 days.

regulations show an intent to discipline inmates for possession of controlled substances based on a positive drug test, and that inmates are on notice of this intention.[8]

■ Dikes takes the position that this regulation was intended to authorize prison officials to *charge* inmates with possession based on a positive test, but not to *sustain* the charge based on the same evidence. In our view, it is unlikely the regulations were intended to allow officials to bring charges based on evidence that was insufficient to sustain the charge. (See *Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 29 [285 Cal.Rptr. 515] [regulations must be given reasonable and commonsense interpretation consistent with apparent purpose and intention of the agency].) Furthermore, an agency's interpretation of its own regulation is entitled to "great weight and deference," and will ordinarily not be disturbed unless it is " ' "plainly erroneous or inconsistent with the regulation." ' " (*Calderon v. Anderson* (1996) 45 Cal.App.4th 607, 612–613 [52 Cal.Rptr.2d 846].) We cannot conclude that an interpretation of the Department's regulations that permits a finding of possession of a controlled substance based on a positive drug test is plainly erroneous or inconsistent with the Department's regulations.[9]

Finally, Dikes contends that Penal Code section 2932 supports his position. He relies on the portion of the statute that provides: "(2) Not more than 180 days of credit may be denied or lost for a single act of misconduct, except as specified in paragraph (1), which could be prosecuted as a felony whether or not prosecution is undertaken. [¶] (3) Not more than 90 days of credit may be denied or lost for a single act of misconduct which could be prosecuted as a misdemeanor, whether or not prosecution is undertaken." (Pen. Code, § 2932, subd. (a).) This statute does not change our view that there was some evidence to support the finding that Dikes possessed a controlled substance in violation of prison regulations. However, it does implicate the issue of whether the discipline imposed for the violation was authorized.

■ Penal Code section 2932, subdivision (a)(4) provides: "Not more than 30 days of credit may be denied or lost for a single act of misconduct defined by

---

[8] Dikes concedes that he received a copy of the Rules and Regulations of the Director of Corrections (§ 3000 et seq.), as required by section 3002.

[9] The Department contends, additionally, that the regulation under which Dikes was charged also prohibits inmates from inhaling, ingesting, injecting or otherwise introducing any controlled substance into their bodies (§ 3016, subd. (a)), and thus there was ample evidence to support the Department's finding of a violation of that regulation. While this is accurate as far as it goes, it is clear from the record the Department made specific findings of "possession" as distinct from ingestion, the former being a more serious offense under the prison's disciplinary system. (§ 3323, subds. (d)(6) & (f)(1).)

regulation as a serious disciplinary offense by the Department of Corrections." Only if the act of misconduct can be prosecuted as a felony or a misdemeanor can the disciplinary action involve a loss of more than 30 days credit. (Pen. Code, § 2932, subd. (a)(2), (3).)[10] The Department now takes the position that Dikes's conduct could not be prosecuted criminally (see Health & Saf. Code, § 11550, subd. (a)), and so falls within the rule of Penal Code section 2932, subdivision (a)(4). Accepting this concession for purposes of this appeal, we conclude that the Department cannot impose a credit forfeiture of more than 30 days for the act of misconduct in question.

## III. DISPOSITION

The order of the trial court is reversed.

Reardon, Acting P. J., and Sepulveda, J., concurred.

On August 17, 2004, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied November 17, 2004. Brown, J., did not participate therein.

---

[10] Even greater losses of credit can be imposed for acts specifically enumerated in Penal Code section 2932, subdivision (a)(1), none of which are charged here.