Filed 6/25/14  In re Guillen CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re JOHN GUILLEN, | C074066 |
| Petitioner, | (Super. Ct. No. 12HC00503) |
| On Habeas Corpus. | |

Defendant John Guillen is serving a 51-year-four-month prison sentence that began in 1989.  In 1993, 1994, and twice in 2004, defendant was charged in prison disciplinary proceedings with violating a prison regulation against manufacturing alcohol.  Following prison disciplinary hearings in each of those years, the Department of Corrections (we will refer to the Department of Corrections, now the Department of Corrections and Rehabilitation, as the Department) found he had manufactured alcohol, which the Department classified as a "Division C" offense, resulting in defendant losing between 91 and 120 days' behavioral credit for each incident.  The classification as a

1

"Division C" offense also meant that the credit could not later be restored even following a discipline-free period. (Cal. Code Regs., tit. 15, § 3327, subd. (a)(1).)[1]

In 2011, defendant filed an appeal with the Department requesting that his "Division C" offenses be reclassified as "Division F" offenses and the credit forfeitures from those rule violation reports be reduced to credit losses consistent with "Division F" offenses. "Division F" offenses carry with them a loss of between 0 and 30 days. (Cal. Code Regs., tit. 15, § 3323, subd. (h).) Classification as a "Division F" offense would also mean that defendant could apply for restoration of 100 percent of any credit forfeited after he remained discipline free for three months. (Cal. Code Regs., tit. 15, § 3328, subd. (c).) The Department canceled the appeal on the ground it was not timely filed and defendant unsuccessfully appealed that cancellation within the levels of the Department.

In 2012, defendant filed a petition for writ of habeas corpus challenging the credit loss, which the trial court denied as untimely.

Defendant now petitions this court for a writ of habeas corpus challenging the decision by the Department to classify his manufacturing of alcohol as "Division C" offenses, which resulted in him being deprived of what he believes is an excessive amount of credits.

We deny the petition for two reasons. One, defendant failed to exhaust his administrative remedies with respect to the merits of the credits issue because he waited so many years to challenge the classification of the offenses as "Division C" offenses. Two, he has failed to persuade us with his one-sentence argument that the concept of an

_____

[1] The Department has a "Disciplinary Credit Forfeiture Schedule" that lists different offenses and the credit forfeiture that results for each one. (Cal. Code Regs., tit. 15, § 3323.) The ones classified lower in the alphabet are more serious and result in more credit forfeiture. (Cal. Code Regs., tit. 15, § 3323, subds. (a)-(h).)

2

unauthorized sentence applies to rulings by the Department following prison disciplinary hearings.[2]

FACTUAL AND PROCEDURAL BACKGROUND

In June 1993, a correctional officer found five gallons of inmate-manufactured alcohol (pruno) in a prison cell that defendant shared with another inmate. The container with the pruno was sitting beside the toilet against the wall. In a prison disciplinary proceeding, defendant was charged with the "specific act[]" of "manufacturing alcohol" and pled guilty. The Department assessed him a 91-day behavioral credit loss.

In November 1994, a correctional officer found approximately one gallon of pruno in a prison cell that defendant shared with two other inmates. In a prison disciplinary hearing, defendant was charged with the "specific act[]" of "manufacturing alcohol" and was found guilty. The Department assessed him a 120-day behavioral credit loss, which the Department notified him was "consistent with a division 'C' offense." (Capitalization omitted.)

In May 2004, a correctional officer found three eight-ounce Folgers's jars of pruno hidden under the lower bunk to which defendant was assigned in a cell defendant was sharing with another inmate. In a prison proceeding, defendant was charged with the "specific act[]" of "manufacturing alcohol" (capitalization omitted) and pled guilty. The Department assessed him a 120-day behavioral credit loss and notified him it was a "Division 'C' offense" and that "Work Time credits forfeited for a Division . . . 'C' offense will not be restored."

---

[2]      At oral argument, the People informed this court that the Department would restore 302 days of credit to defendant and then argued the appeal is moot. We do not decide whether this is the appropriate amount of credit. In any event, the Department's action has no bearing on the resolution of this appeal, which turns on defendant's failure to exhaust administrative remedies.

In September 2004, a correctional officer found a large plastic bag containing two gallons of a liquid substance made of a fruit pulp mixture that appeared to be in the late stages of fermentation and emitted a strong alcoholic odor. The large plastic bag was hidden underneath the lower bunk to which defendant was assigned in a cell defendant was sharing with another inmate. In a prison proceeding, defendant was charged with the "specific act[]" of "Manufactur[ing] alcohol" and pled guilty. The Department assessed him a 91-day behavioral credit loss, which the Department notified him was consistent with a "Division 'C' offense."

On July 27, 2010, defendant submitted an application for restoration of these credits. On April 1, 2011, defendant was denied restoration because defendant's rule violation reports were "deemed not restorable."

On April 14, 2011, defendant submitted a "CDCR 602" appeal with the Department requesting that "the Division 'C' Offenses be reduced to Division 'F' Offenses and the credit forfeitures from those [rule violation reports] be reduced to credit loss consistent with Division 'F' offenses." The appeal was never received by the Department, so defendant submitted another "CDCR 602" appeal on October 17, 2011. In it, he explained he was no longer "attempting to restore [his credits]. Instead, [he] want[ed] the [rule violation reports] to be reclassified as Division 'F' offenses," explaining that his rule violation reports were misclassified "in the first place" as "Division C" offenses and that they were really "Division F" offenses. He further explained that under Penal Code section 2932 and *In re Dikes* (2004) 121 Cal.App.4th 825, the Department could not punish the act of manufacturing alcohol with more than a 30-day forfeiture.[3] Finally, he noted that California Code of Regulations, title 15, section

---

[3]     Penal Code section 2932, subdivision (a)(2) through (4), provides that "[n]ot more than 180 days of credit may be denied or lost for a single act of misconduct . . . which could be prosecuted as a felony whether or not prosecution is undertaken"; "[n]ot more

3323 had been changed to make manufacturing of alcohol a "Division F" offense, which carried only a zero to 30-day credits forfeiture.[4]

The Department bypassed the first level of review, and at the second level of review, dated October 25, 2011, the Department canceled the appeal, explaining that

_____

than 90 days of credit may be denied or lost for a single act of misconduct which could be prosecuted as a misdemeanor, whether or not prosecution is undertaken"; and "[n]ot more than 30 days of credit may be denied or lost for a single act of misconduct defined by regulation as a serious disciplinary offense by the Department of Corrections and Rehabilitation."

*Dikes* held that a positive urinalysis test was "some" evidence that the petitioner had possessed marijuana in violation of prison rules. (*In re Dikes*, *supra*, 121 Cal.App.4th at p. 832.) The petitioner there was assessed a 130-day credit loss for the possession charge. (*Id*. at p. 829.) The appellate court went on to "conclude" that "[a]ccepting [a] concession [from the Department that the petitioner's conduct could not be prosecuted criminally] for purposes of the appeal," "the Department cannot impose a credit forfeiture of more than 30 days for the act of misconduct in question." (*Id*. at p. 834.)

[4]     According to the Department's "NOTICE OF CHANGE TO REGULATIONS" published July 20, 2007, the Department was amending various sections of the California Code of Regulations, title 15 to bring the regulations "into compliance with PC Section 2932 which dictates that the Department must not assess more than 30 days forfeiture of credit for any 'serious' violation of the Departmental regulations. . . . Therefore, the Department must not assess more than 30 days of forfeiture of credits, unless the violation is either a misdemeanor or felony as indicated by the PC."

As a result of the amendments, the "fermentation or distillation of materials in a manner consistent with the production of alcohol" is now a "Division F" offense, subject to a "credit forfeiture of 0-30 days." (Cal. Code Regs., tit. 15, § 3323, subd. (h)(6).)

Before the amendment, the offense (which had also simply been referred to as "[m]anufacture of alcohol" had been a "Division C" offense. (Cal. Code Regs., tit. 15, § 3323, subd. (f)(10), Register 92, No. 5 (Jan. 31, 1992) p. 165 ["[m]anufacture of alcohol" is a "Division 'C' offense[]," "credit loss 91-120 days"]; Cal. Code Regs., tit. 15, § 3323, subd. (e)(11), Register 2004, No. 53 (Dec. 31, 2004) p. 168 ["[t]he fermentation or distillation of materials in a manner consistent with the production of alcohol" is a "Division 'C' offense[]," "credit forfeiture of 91-120 days"].) The "physical possession of alcohol in an institution/facility" remains a "Division C" offense with a "credit forfeiture of 91-120 days." (Cal. Code Regs., tit. 15, § 3323, subd. (e)(10).)

5

defendant had not filed the appeal within the "15 business days from the date [he] received [his] final copies to appeal the [rules violation reports]."

On November 11, 2011, defendant submitted an appeal of the cancellation, arguing he was not appealing a decision resulting from the rules violation report, but rather, the Department's refusal to restore his credits and he was entitled to the restoration due to *Dikes* and the restructuring of the California Code of Regulations.

The Department bypassed the first level of review, and at the second level of review, dated November 22, 2011, the Department denied the appeal, finding defendant's argument about the delay in filing his appeal to be "unsubstantiated."

Defendant appealed to the third level of review on December 26, 2011. On March 30, 2012, the Department (the chief of the office of appeals) denied the appeal. It began by explaining that "the issue being appealed is the cancellation, not the original appeal issue." It continued that the appeal was properly canceled because defendant did not submit his appeal within the prescribed time constraints according to the dates of the rules violation reports. It further explained that the appeal under review was a duplicate of the same issues defendant raised in his October 2011 appeal and the first level already provided a response to that appeal by denying it on the basis that his rule violation reports were ineligible for credit restoration as "Division C" offenses. In concluding the denial, the Department stated, "This decision exhausts the administrative remedy available to the appellant within the CDCR."

On July 12, 2012, defendant submitted another appeal, arguing that his rules violation reports should be reduced to "Division F" offenses and the penalty be reduced to 30 days for each violation. The Department bypassed the first level of review. At the second level of review, dated July 18, 2012, the Department "returned" the appeal that defendant had submitted because it "determined that [defendant] [was] attempting to submit an appeal that has been previously cancelled." He was "advised that this is considered a misuse or abuse of the appeals process" and that "[r]epeated violations may

6

lead to [him] being placed on appeal restriction." (Italics omitted.) Finally, he was advised that "you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified . . . . [O]nce an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted."

In October 2012, defendant filed a petition for writ of habeas corpus in the trial court contending he was "entitled to restoration of good conduct credits according to law and in accordance with California case law" and that "the equal protection clause of the U.S. Constitution mandates the correction." (Capitalization omitted.) In November 2012, the trial court denied the petition finding it was "summarily barred from review" because the classification of the rules violation reports were issued over eight years ago and thus, his petition was no longer timely.

In June 2013, defendant filed this petition for writ of habeas corpus in this court, asking for full credit restoration. We issued an order to show cause to the warden asking why the relief prayed for by defendant should not be granted. The Department contends the petition should be denied because, among other things, defendant did not exhaust his administrative remedies with respect to the merits of the credits issue. We agree with the Department on this contention. Further, we are not persuaded by defendant's one-sentence contention that we should reach the merits of the credits issue because, according to defendant, it is an unauthorized sentence.

DISCUSSION

I

*Defendant Did Not Exhaust His Administrative Remedies*

*With Respect To The Merits Of The Credits Issue*

"As a general rule, a litigant will not be afforded judicial relief unless he has exhausted available administrative remedies. [Citation.] [¶] The requirement that

7

administrative remedies be exhausted 'applies to grievances lodged by prisoners.' " (*In re Dexter* (1979) 25 Cal.3d 921, 925.)

The Department contends that defendant "should be barred from habeas relief" because its third level decision did not involve the merits of his credits issue and as such, that claim was unexhausted. Defendant responds that the Department "overlooks a fundamental fact," namely, the Department itself stated when concluding the third level appeal decision on December 26, 2011, that "This decision exhausts the administrative remedy available to the appellant within the CDCR."

The Department is correct that the only aspect of defendant's appeal that it considered exhausted was the cancellation issue. The third level decision stated at the beginning, "the issue being appealed is the cancellation, not the original appeal issue." Thus, contrary to defendant's claim that the Department "considered the matter administratively exhausted," the only matter that it considered exhausted was the cancellation issue. It did not consider the merits of defendant's claim exhausted.[5]

And the Department was correct as a matter of law that the merits of defendant's credits issue had not been exhausted. That is so because the merits of defendant's issue had not been timely submitted to the Department. On October 17, 2011, defendant submitted the "CDCR 602" appeal asking that "the [rule violation reports] to be reclassified as Division 'F' offenses," explaining that his rule violation reports "were misclassified in the first place." Among other law, he cited Penal Code section 2932 and

---

[5] The determination of the Department was correct. "Once cancelled, an appeal shall not be accepted" unless the cancellation is appealed and there is a decision reversing the prior decision canceling the appeal. (Cal. Code Regs., tit. 15, §§ 3084.6, subd. (e), 3084.6, subd. (a)(3).) "If an appeal is cancelled at the third level of review, any appeal of the third level cancellation decision shall be made directly to the third level Appeals Chief." (Cal. Code Regs., tit. 15, § 3084.6, subd. (e).) Here, the third level cancellation decision was signed by the third level appeals chief, thus, defendant had exhausted his administrative remedy as to the issue of cancellation.

8

argued the Department could not punish the act of manufacturing alcohol with more than a 30-day forfeiture. On October 25, 2011, the Department canceled defendant's appeal. "An appeal may be cancelled" when "[t]ime limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit within the prescribed time constraints." (Cal. Code Regs., tit. 15, § 3084.6, subd. (c)(4).) At the time of defendant's rule violation reports that classified his manufacturing of alcohol as a "Division C" offense, defendant was required to "submit the appeal within 15 working days of the event or decision being appealed . . . ." (Cal. Code Regs., tit. 15, § 3084.6, subd. (c), Register 92, No. 41 (Oct. 9, 1992) p. 127; Cal. Code Regs., tit. 15, § 3084.6, subd. (c), Register 93, No. 24 (June 11, 1993) p. 129; Cal. Code Regs., tit. 15, § 3084.6, subd. (c), Register 97, No. 45 (Nov 7, 1997) p. 130.) Defendant himself stated in his appeal that he was not "attempting to restore [his credits]" but rather, was asking "the [rule violation reports] to be reclassified as Division 'F' offenses," because his offenses "were misclassified in the first place." Defendant filed this appeal challenging the alleged misclassification between nine to 17 years after "the event or decision" (here the alleged misclassification), which is a far cry from within 15 working days of that event or decision. "Once cancelled, an appeal shall not be accepted except [in certain situations not applicable here]." (Cal. Code Regs., tit. 15, § 3084.6, subd. (e).)

Defendant responds that even if he did not administratively exhaust his appeals, the "courts make exceptions to the exhaustion requirements where the administrative remedy is unavailable, inadequate, or where it would be futile to pursue administrative relief." Defendant contends he "could never have appealed the lost behavioral credits within 15 days of the disciplinary hearing decisions in 1993, 1994, and 2004" because "[d]uring those periods, [the Department] still had an illegal policy of classifying the manufacture of alcohol as a 'Division C' offense punishable by credit loss of 91 to 120 days, directly violating the mandate of Penal Code section 2932." (Fn. omitted.) Defendant is speculating that had he called to the Department's attention the alleged

9

misclassification via a timely appeal within 15 days of rules violation reports in 1993, 1994, and 2004, that the Department would have denied his appeal.

Moreover, even if the Department would have denied his appeal during those time periods, that does not mean defendant was excused from exhausting his administrative remedies. He could have filed a timely appeal within 15 days of the disciplinary hearing decision, and then, if the Department continued to deny him the credit, he could have filed in the trial court a petition for habeas corpus challenging that deprivation of credit based on an alleged conflict between the Department's policy of classifying manufacture of alcohol as a "Division C" offense with an attendant loss of credit of between 91 and 120 days and Penal Code section 2932. Defendant even admits that Penal Code section 2932, which prohibits a state prison official from denying an inmate more than 30 days of good behavior credit for a "serious disciplinary offense" that was not prosecutable as a felony or misdemeanor, was in effect at the time of all his rule violation reports.

In summary, defendant did not exhaust his administrative remedies as to the merits of the credits issue and he was not excused from doing so.

## II

*Defendant Has Failed To Persuade Us That Rulings By The Department Following Disciplinary Hearings Are Akin To Unauthorized Sentences By The Trial Court*

Defendant contends that regardless of whether he exhausted his administrative remedies, "[t]his [credit loss] was sentencing error, and these errors are correctable at any time because it involves Due Process considerations and the Due Process Clause of the Fifth Amendment. See, *Marks v. United States* (1977) 430 U.S. 188 . . . ." This is the entirety of defendant's argument addressing why the Department's action here was sentencing error.

There are at least two problems with defendant's argument. One, defendant's credit loss was not sentencing error, because it was incurred after a prison disciplinary proceeding and was not part of his criminal case. Prison disciplinary proceedings are not

10

part of the underlying criminal case. (*Wolff v. McDonnell* (1974) 418 U.S. 539, 556 [41 L.Ed.2d 935, 951].) Two, defendant has provided us with no law or argument why the concept of an unauthorized *sentence*, which is a sentence that "could not lawfully be imposed under any circumstance in the particular case" (*People v. Scott* (1994) 9 Cal.4th 331, 354) applies to prison disciplinary proceedings. Without any argument or authority as to why the concept of an unauthorized *sentence* should be applied to the context *of prison disciplinary hearings*, defendant has failed to carry his burden to persuade us that the merits of his appeal should be considered despite having not exhausted his administrative remedies.

## DISPOSITION

The order to show cause is discharged, and the petition for writ of habeas corpus is denied.


          ROBIE          , J.


We concur:


      RAYE          , P.J.


      MAURO        , J.