[No. C057195. Third Dist. Feb. 2, 2010.]

MICHELLE A. BASDEN, an Incompetent Person, etc., Plaintiff and Appellant, v. JOHN A. WAGNER, as Director, etc., Defendant and Respondent.

**COUNSEL**

Charles Wolfinger for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Susan E. Slager and Mateo Muñoz, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**NICHOLSON, J.**—A state administrative agency's nonsensical interpretation of the statute here at issue, and the harm it causes people, illustrates why courts do not always defer to an agency's interpretation.

Since 1999, plaintiff Michelle A. Basden, a disabled adult, received medical and personal care in her home through the In-Home Supportive Services program (IHSS). IHSS is a state social welfare program designed to avoid institutionalization of incapacitated persons. It provides supportive services to aged, blind, or disabled persons who cannot perform the services themselves and who cannot safely remain in their homes unless the services are provided to them. The program compensates persons who provide the services to a qualifying incapacitated person.

Plaintiff's mother provided care to plaintiff and was compensated for it under the IHSS program. The bulk of plaintiff's care consisted of protective supervision.

At the same time plaintiff's mother provided care to plaintiff, she also provided care to plaintiff's brother, Andrew, who also was a disabled adult who lived at the home. The IHSS program compensated plaintiff's mother for the care she gave to Andrew.

Upon moving to a different county, plaintiff's and Andrew's participation in the IHSS program was reassessed as required by law. Both sought to have

their mother continue providing their in-home care funded under the IHSS program, and to do so effectively full time for each. Plaintiff again sought compensation for her mother primarily to provide protective supervision. .

The new county approved Andrew's receiving IHSS-funded care from his mother. However, it determined plaintiff was not sufficiently incapacitated to require protective supervision services, and it denied plaintiff those services at IHSS expense.

Plaintiff appealed the county's decision to the State Department of Social Services (Department), the agency responsible for implementing the IHSS program. Defendant John A. Wagner, the Department's director (the Director), denied plaintiff's appeal, but he did so differently than did the county. Relying on a statute the county did not reference, the Director determined plaintiff did not qualify for any IHSS-funded care from her mother, including protective supervision services.

The statute, subdivision (e) of Welfare and Institutions Code section 12300 (section 12300(e)), in general, prevents compensating a parent under the IHSS program for providing in-home services to a "child" unless the parent has left "full-time employment" to care for the child. The Director decided plaintiff's mother had not left full-time employment to care for plaintiff as she was already employed full time under the IHSS program caring for Andrew. The Director denied plaintiff's appeal on this ground, concluding plaintiff was not entitled to any compensated in-home service provided by her mother.

Plaintiff sought extraordinary relief in the trial court. The trial court, however, agreed with the Director and denied plaintiff's writ petition.

Plaintiff appealed the trial court's judgment. Before us, she claims the Director erred in applying section 12300(e) to her because section 12300(e)'s limitation applies only to parents of minor children, not to parents of adult children such as her. Following our request for additional briefing, plaintiff also claims section 12300(e) does not apply because her mother's in-home, full-time, IHSS-funded care for Andrew does not constitute full-time employment for purposes of the statute.

We agree with plaintiff on the latter point and reverse the trial court's judgment. Section 12300(e)'s reference to full-time employment does not include providing in-home, full-time, IHSS-funded care by a parent to a child so as to bar the parent from being compensated for providing in-home,

full-time, IHSS-funded care to another of her children. To interpret the statute otherwise would frustrate the IHSS program's very purpose.[1]

## STATUTORY BACKGROUND

In 1973, the Legislature enacted the IHSS program to enable aged, blind or disabled poor persons to avoid institutionalization by remaining in their homes with proper supportive services. (Welf. & Inst. Code, § 12300 et seq.)[2] "Supportive services" are described in discrete categories, such as "domestic services," "personal care services," and "protective supervision," to name a few.[3,4] (§ 12300, subd. (b).)

---

[1] Because we decide this case on the meaning of the phrase "full-time employment" as used in section 12300(e), we do not address plaintiff's arguments concerning the meaning of the word "child" in the same statute.

[2] Hereafter, undesignated references to sections are to the Welfare and Institutions Code.

[3] Supportive services include domestic services and services related to domestic services, heavy cleaning, personal care services, accompanying a recipient to health-related appointments, yard hazard abatement, protective supervision, teaching independence skills, and certain paramedical services. (§ 12300, subd. (b).) Of relevance here, "protective supervision" consists of observing and safeguarding "those IHSS beneficiaries who are non-self-directing, in that they are unaware of their physical or mental condition and, therefore, cannot protect themselves from injury, *and* who would most likely engage in potentially dangerous activities." (*Calderon v. Anderson* (1996) 45 Cal.App.4th 607, 616 [52 Cal.Rptr.2d 846], original italics.)

[4] IHSS is actually provided under three programs: the original IHSS program (the residual program) (§ 12300 et seq.); the Medi-Cal personal care services program (PCSP) (§ 14132.95); and the IHSS Plus waiver program (§ 14132.951). The latter two programs tap into federal funds, and IHSS recipients will receive services under the residual program only if they do not qualify under the other two programs. (§§ 12300, subd. (g), 14132.95, subd. (b), 14132.951, subd. (d).)

Plaintiff filed a motion for judicial notice on August 7, 2009, asking us to rely on certain documents to determine that plaintiff is entitled to receive protective supervision services under the PCSP, and that section 12300(e) does not apply to the PCSP. Plaintiff had believed she could receive protective supervision services only under the residual program, to which section 12300(e) clearly applies. She now claims, as a result of the documents she seeks to have us judicially notice, that she can receive protective supervision services under the PCSP, and that section 12300(e) does not apply to that program. Her conclusion is incorrect. Administration of the PCSP is subject to the requirements of section 12300(e). (§ 14132.95, subd. (f).)

Plaintiff claims section 12300(e) cannot apply to services funded under the PCSP because the PCSP cannot be used to fund services provided by parents to minor children, and as a result the Director has never applied section 12300(e) to the PCSP's funding of services provided to adult children. She states the Director has never interpreted section 12300(e) to apply to the services plaintiff has received under the PCSP since 1999 (which is all of her IHSS except protective supervision), even though her mother was providing those services to plaintiff at the same time she was providing more than 40 hours per week of IHSS to her brother, Andrew.

No matter what the Director has done in the past, the statutory language is clear: "Services pursuant to [the PCSP] shall be rendered . . . in the manner authorized in Article 7 *(commencing with Section 12300)* . . . ." (§ 14132.95, subd. (f), italics added.) Thus, whether section 12300(e) applies to the PCSP is based on the qualifying language of section 12300(e),

The Department promulgates regulations that implement the program, and county welfare departments administer the program under the Department's supervision. Counties process applications for IHSS, determine the individual's eligibility and needs, and authorize services. The county either obtains and pays the provider of the services, or it pays the recipient who hires a provider. (*Miller v. Woods* (1983) 148 Cal.App.3d 862, 868 [196 Cal.Rptr. 69] (*Miller*).)

The total amount of services provided to any one person is limited by statute. Severely impaired recipients may receive up to 283 hours per month, or approximately 65.4 hours per week, of supportive services paid through the program. Less severely impaired recipients may receive up to 195 hours per month, or approximately 45 hours per week. (§ 12303.4.)

The Department's regulations provide some relief from these strict hour limitations as they may apply to protective supervision services. When two or more IHSS recipients are living together and both require protective supervision, "the need shall be treated as a common need and prorated accordingly." (Cal. Dept. Social Services Manual of Policies and Procedures (Manual), § 30-763.331.) This is done to ensure "as much as possible of the total common need for protective supervision may be met within the payment and hourly maximums." (*Ibid.*) At oral argument, counsel for the Director admitted this regulation allows one provider to be authorized to provide protective supervision services to more than one person residing in the same home.

The issues before us arise from the Department's interpretation and application of section 12300(e). Under section 12300(e), a parent will *not* be paid through the IHSS program for providing supportive services to a child unless the parent has left "full-time employment" to care for her child or is unemployed on account of providing supportive services to her child. The statute reads in relevant part: "Where supportive services are provided by a person having the legal duty pursuant to the Family Code to provide for the care of his or her child who is the recipient, the provider of supportive services shall receive remuneration for the services only when the provider *leaves full-time employment* or is prevented from obtaining full-time employment because no other suitable provider is available and where the inability

---

not on the scope of the PCSP or the Director's interpretation of it. Since we determine this case based on section 12300(e)'s language and, in particular, the meaning of the phrase "full-time employment," we deny plaintiff's August 7 motion for judicial notice as moot.

of the provider to provide supportive services may result in inappropriate placement or inadequate care." (§ 12300(e), italics added.)[5]

Plaintiff claims her mother's being compensated under the IHSS program to provide full-time care to her brother does not constitute full-time employment for purposes of section 12300(e). The Director disagrees, claiming plaintiff's mother's full-time and compensated care of her other child constitutes full-time employment for purposes of section 12300(e) and bars her from being compensated for providing any IHSS to plaintiff.

## FACTS AND PROCEDURAL HISTORY

The relevant facts are not in dispute. Plaintiff is 30 years old. She is incapacitated. She suffers from mental retardation, asthma, and sleep apnea. She lives in Madera County with her parents, James and Darlene Basden, who serve as her conservators, and with her older brother, Andrew, who also suffers from mental retardation.

The family lived in San Diego County prior to moving to Madera. While in San Diego, both plaintiff and Andrew received IHSS, including protective supervision services. Plaintiff received a total of 240.4 IHSS hours per month, or about 56 hours per week. The record does not disclose the number of hours of IHSS Andrew received, but there is no factual dispute that Andrew received more than 40 hours per week of IHSS. Their mother, Darlene, was compensated under the IHSS program for providing IHSS to both of them.

When the family moved to Madera County, the children's cases were transferred there, and Madera County as required by law reassessed their eligibility for IHSS. (§ 12301.1, subds. (a), (d); Manual, § 30-759.9.) Madera County authorized Andrew to receive a total of 237 hours of IHSS per month, or about 54.7 hours per week, including protective supervision. It designated Darlene as the care provider.

Regarding plaintiff, Madera County proposed reducing her monthly IHSS hours from 240.4 to 30.6, or about seven hours per week. In particular, the

---

[5] In addition, section 12300(e) limits the types of supportive services for which a parent can be hired under the IHSS program to provide. Those services are services "related to domestic services" (as opposed to domestic services), personal care services, accompanying the recipient to a health-related appointment, paramedical services, and protective supervision "only as needed because of the functional limitations of the child." (§ 12300(e).) Domestic services, heavy cleaning, yard hazard abatement, and teaching of independence skills done by the parent will not be compensated.

county determined plaintiff did not require protective supervision services, resulting in a reduction of 195 monthly IHSS hours. The county's determination was *not* based on section 12300(e), but was rather based on whether plaintiff qualified for protective supervision services. The county said nothing about Darlene's eligibility to be compensated for providing IHSS to both plaintiff and Andrew under section 12300(e).

Plaintiff requested an administrative hearing from the Department to contest the county's decision not to authorize protective supervision services for her. At the hearing before an administrative law judge, Darlene testified that she intended to provide IHSS to both plaintiff and Andrew and that both required protective supervision. It was undisputed that Darlene provides 237 IHSS hours to Andrew per month, or 54.7 hours per week, more than a full-time job.

Adopting the administrative law judge's decision, the Director looked beyond the issue of protective supervision and determined plaintiff was not eligible to receive *any* IHSS from her mother, including protective supervision. The Director based his decision on section 12300(e)'s requirement that the parent provider must leave full-time employment in order to be compensated for providing care under the IHSS program. This was the first time section 12300(e) had been raised in this matter.

First, the Director determined section 12300(e) applied to plaintiff, an adult child, and Darlene because the Family Code imposed on Darlene a legal duty to care for plaintiff even as an adult. Specifically, Family Code section 3910 imposes on a father and a mother "an equal responsibility to maintain, to the extent of their ability, a child *of whatever age* who is incapacitated from earning a living and without sufficient means." (Fam. Code, § 3910, subd. (a), italics added.)

Second, the Director determined Darlene had not satisfied the unemployment condition imposed by section 12300(e) for being compensated for providing IHSS to plaintiff. The Director wrote: "One of the requirements that must be met [under section 12300(e)] is that the parent-provider has left full-time employment or is prevented from obtaining full-time employment to care for a child." Darlene "has neither left, nor been precluded from, full-time employment. She is already employed more than full time. She is employed 54.7 hours per week [providing IHSS to Andrew]. Unfortunately, [plaintiff] is not eligible to receive IHSS services from her mother."

Plaintiff petitioned the Sacramento County Superior Court for a writ of administrative mandate to set aside the Director's decision. She claimed section 12300(e)'s requirement that the parent-provider must leave full-time employ in order to be paid for providing IHSS applied only to parents caring for minor children, not parents caring for adult children. She also contended the evidence established that she required protective supervision services.

The trial court denied plaintiff's petition. It agreed with plaintiff that the weight of the evidence established she required protective supervision. However, the court agreed with the Director that section 12300(e) barred the county from paying Darlene to provide IHSS to plaintiff because Darlene was already employed full-time providing IHSS to Andrew and she had not left that employ to care for plaintiff.

Plaintiff appeals, claiming the trial court's interpretation of section 12300(e) is wrong. We asked for additional briefing on three issues, the most important of which was whether the Director's interpretation of the phrase "full-time employment" in section 12300(e), as including being compensated for providing IHSS for 40 hours or more per week for one's own child, conforms with the Legislature's intent. Plaintiff argues it does not.[6]

DISCUSSION

I

*Standard of Review*

The trial court's interpretation and construction of a statute is a question of law which we review de novo. (*Coburn v. Sievert* (2005) 133

---

[6] The other two issues concerned whether the Director and we are bound by San Diego County's apparent decision that Darlene's provision of care to Andrew did not constitute full-time employment for purposes of section 12300(e), and what effect, if any, the IHSS program's incorporation of federal Social Security eligibility regulations that define a child as a minor have on the meaning of section 12300(e). As to the first issue, both plaintiff and the Director agree that the Director and we are not bound by any previous local decision on Darlene's eligibility as a provider to plaintiff while providing services to Andrew. A county must completely reassess a recipient's eligibility for IHSS at least every 12 or 18 months, or, as happened here, upon a recipient's relocation to a new county. (§ 12301.1.) This reassessment is de novo. As a result, San Diego County's apparent decision is not binding on the Director or this court.

Regarding the second issue, because we do not decide this case on the meaning of the term "child," we do not discuss what effect, if any, Social Security regulations have on that term's meaning in section 12300(e).

Cal.App.4th 1483, 1492 [35 Cal.Rptr.3d 596].) The rules of statutory interpretation are well known. "When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.] If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977–978 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

■ The Department's interpretation of section 12300(e) is one of the extrinsic aids we may utilize when interpreting an ambiguous statute, but it is not conclusive. "Courts must . . . independently judge the text of the statute, taking into account and respecting [an administrative] agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth. [Citation.] Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative. To quote the statement of the Law Revision Commission in a recent report, 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' (Judicial Review of Agency Action (Feb. 1997) 27 Cal. Law Revision Com. Rep. (1997) p. 81, italics added.)" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

II

*Meaning of the Term "Full-time Employment"*

The Director's interpretation of "full-time employment" in section 12300(e) precludes a parent who is not employed outside the home but who is

providing in-home, full-time, IHSS-funded care to one of her disabled children from being compensated for providing any in-home IHSS-funded care to any of her other disabled children.

The IHSS statutes do not define the phrase "full-time employment" in section 12300(e). The Department's regulations do not define the phrase. There is nothing in the statute's legislative history that offers a meaning to the phrase.[7] And there is no evidence the Department has ever interpreted the phrase as it did in plaintiff's case.

Plaintiff asks us to fill this vacuum. She argues the Legislature could not have intended "full-time employment" to have the Department's interpretation as it runs counter to the IHSS program's purpose. We agree with plaintiff.

On announcing the IHSS program's purpose, the courts have been singularly clear. "[T]he Legislature enacted the [IHSS] program to enable aged, blind or disabled poor persons to avoid institutionalization by *remaining in their homes* with proper supportive services." (*Marshall v. McMahon* (1993) 17 Cal.App.4th 1841, 1844 [22 Cal.Rptr.2d 220], italics added, fn. omitted.) IHSS is a "state and federally funded program developed to permit persons with disabilities to live safely *in their own homes*." (*Calderon v. Anderson, supra*, 45 Cal.App.4th at p. 610, italics added; see also *Miller, supra*, 148 Cal.App.3d at p. 867.)

Although the Director asks us to defer to his interpretation of section 12300(e), his interpretation thwarts the express legislative purpose. To fulfill that purpose, we cannot interpret section 12300(e)'s use of "full-time employment" in a way that could result in plaintiff's being required to *leave* her home in order to obtain the services she needs. Yet that is exactly what the Director asks us to do. If plaintiff's mother is disqualified from providing care to plaintiff because she already provides care to Andrew, and no other qualified person is available to provide care to plaintiff, then plaintiff will have to be institutionalized to receive the care she requires even though her mother is in the home and is able to provide the care. This is the thrust of the Director's interpretation. It obviously is not what the Legislature intended.

---

[7] The parties found no legislative history that could assist us, and neither did we. In that regard, we grant plaintiff's request for judicial notice filed October 8, 2008. (Evid. Code, §§ 451, 452, 459.)

The Director claims the IHSS statutes treat providers such as Darlene as employees, and he thus concludes their work providing IHSS constitutes employment. The Director is partially correct. The IHSS statutes treat providers as employees for *some* purposes, but not for all.

IHSS providers work pursuant to various arrangements. Some are civil service employees of a county; some are employees of an entity that contracts with the county; some contract directly with the county or authorized entity; some are referred to the recipient by the authorized entity; and some contract directly with the recipient. (§§ 12301.6, 12302, 12302.1, 12302.25.)

Each county is required to act as an "employer," or to establish an "employer," for IHSS providers for purposes of the state public employee-employer relations laws. (§ 12302.25, subd. (a).)

Where a provider or a recipient receives direct payment from the county, the state is responsible for performing for the recipient a number of legal obligations an employer has for its employees, such as those related to unemployment compensation, unemployment compensation disability benefits, workers' compensation, federal and state income tax, and federal old-age survivors and disability insurance benefits. (§ 12302.2.) These "employer" duties suggest providing IHSS full time could be considered an employment.

However, providing IHSS-funded care is not an employment for all purposes. By statute, the entity that is deemed the provider's employer for employer-employee relations laws is expressly not deemed to be the provider's employer for purposes of liability due to the provider's negligence or intentional torts. (§ 12301.6, subds. (c)(1), (2)(A), (f)(1).)

These marked differences in treatment by the IHSS statutes indicate that, at most, the Legislature defined IHSS providers as employees for limited circumstances, but undisputedly not for all circumstances. More significantly, nothing in the statutes even remotely suggests the Legislature defined the provision of in-home, full-time, IHSS-funded care *by a parent to a child* as full-time employment at all, much less in order to *limit* that parent's eligibility to receive IHSS funding for caring for all of her IHSS-qualified children. Otherwise, the Legislature would have acted contrary to its own purpose.

The Director claims the purpose of the IHSS program is to allow the recipient to receive care in her home, but not necessarily by her parent. Thus, in this case, plaintiff may not be able to receive IHSS from her mother, but, according to the Director, she can hire another caretaker to come into her home to provide her with the same type of care her mother provided her and her brother in the past and continues to provide to her brother.

This argument ascribes to the Legislature an irrational intent. It requires the state to pay more for services than may be required. The Director would have two people providing protective supervision services in plaintiff's home, and would pay each for their separate but overlapping time, when, under his own regulations, the Director could prorate plaintiff's and Andrew's common need for protective supervision from their mother, and, potentially, compensate the mother for roughly the same amount of hours she would have rendered care if another caretaker was in the home for the other child. (Manual, § 30-763.331.) We may not interpret statutes in a manner that leads to absurd consequences, as the Director's argument on this point does. (*Wilcox v. Birtwhistle, supra,* 21 Cal.4th at p. 978.)

The Director's interpretation also lacks any precedent. From the record provided us, his interpretation appears to be limited to this case. The Director has not promulgated any regulations defining "full-time employment." He also has given us no indication that he has applied section 12300(e) in the manner he seeks to do so here before or since this case arose. Under these circumstances, we may not defer to the Director's interpretation.

■ In short, considering Darlene's provision of IHSS-funded care to Andrew as full-time employment for purposes of section 12300(e) is contrary to the Legislature's intent. Whatever the phrase "full-time employment" may mean, it does not mean, for purposes of section 12300(e), the full-time provision of IHSS-funded care by a parent to her child. Thus, Darlene was not employed full time by providing IHSS-funded care to Andrew and was not barred by section 12300(e) on account of her caring for Andrew from being remunerated for the qualifying services she would provide to plaintiff. The Director's basis for rejecting plaintiff's appeal was irrational and inconsistent with section 12300(e).

Furthermore, the error was prejudicial. The trial court found plaintiff was entitled to receive protective supervision services. Had the Director not applied section 12300(e) incorrectly, it is more likely than not that plaintiff would have been authorized to receive IHSS-funded protective supervision services from her mother. We will thus reverse the judgment.

## DISPOSITION

The judgment is reversed. The trial court is directed to issue a writ of mandate setting aside the Director's decision and remanding this matter to the County of Madera for further consideration consistent with this opinion. Plaintiff's request in her petition for statutory attorney fees and costs at trial shall be addressed by postjudgment motion in the trial court. Costs on appeal are awarded to plaintiff. (Cal. Rules of Court, rule 8.278(a).)

Blease, Acting P. J., and Sims, J., concurred.