[No. B084320. Second Dist., Div. Three. May 7, 1996.]

JOSE CALDERON, an Incompetent Person, etc., Plaintiff and Respondent,
v.
ELOISE ANDERSON, as Director, etc., Defendant and Appellant.

608

## COUNSEL

Daniel E. Lungren, Attorney General, Charlton G. Holland, Assistant Attorney General, John H. Sanders and Robin T. Gertler, Deputy Attorneys General, for Defendant and Appellant.

Kimberly C. Swain and Marilyn Holle for Plaintiff and Respondent.

## OPINION

**KITCHING, J.**—The California Department of Social Services (Department), by its Director Eloise Anderson, respondent below, appeals from a judgment granting a peremptory writ of administrative mandamus ordering the Department to set aside a May 19, 1992 administrative decision denying Jose Calderon (Calderon), petitioner below, benefits for protective supervision services under the In-Home Supportive Services Program (IHSS).

We find the trial court erred in determining Calderon met the eligibility requirements for protective supervision services set forth in the Departments Manual of Policies and Procedures (MPP), section 30-757.17, and interpreted in *Marshall* v. *McMahon* (1993) 17 Cal.App.4th 1841 [22 Cal.Rptr.2d 220]. Accordingly, we reverse the judgment and order the trial court to enter a new and different judgment denying the writ petition.

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves the interpretation of MPP section 30-757.17 and the scope of the protective supervision service offered by California's IHSS, a

state and federally funded program developed to permit persons with disabilities to live safely in their own homes. (Welf. & Inst. Code, § 12300.)[1] Services and program benefits are administered through the Los Angeles County Welfare Department (County). Among the services provided is one for protective supervision, described as monitoring behavior and safeguarding non-self-directing, confused, mentally impaired, or mentally ill persons against injury, hazard, or accident. (§ 12300; MPP, § 30-757.17.)

Neither the facts nor the extent of Calderon's medical condition is in dispute.

Ofelia Ramos (Ramos) is the provider for her son Jose Calderon, who at 35 years old suffers from severe mental retardation, physical deformities, and cerebral palsy, which render him completely bedridden. Calderon functions at the cognitive level of a one-year-old child. He has no use of his extremities, which remain in a fixed position, cannot move his head, is nonverbal, and is unable to care for himself. Under IHSS, Calderon receives 169.6 hours per month of nonmedical personal services benefits, which include, inter alia, feeding, bowel and bladder care, bathing, and dressing. These hours do not include protective supervision benefits.

In April 1991, after a series of home visits, County determined Calderon's benefits should remain at 169.6 hours per month, without authorization for protective supervision services. In April 1992, after an unsuccessful administrative review, Calderon appealed the decision and requested a hearing with the Department on the issue of protective supervision benefits.

On May 13, 1992, an administrative law judge (ALJ) heard testimony and received evidence, including up-dated medical information, regarding Calderon's need for protective supervision services. On May 19, 1992, the ALJ issued a written decision denying Calderon's request and affirming the Department's (County's) position. The ALJ considered Calderon's physical condition and stated, in pertinent part, that "Los Angeles County correctly determined that the . . . (IHSS) beneficiary does not require Protective Supervision services, as defined by the IHSS Program, since the described need is not to monitor the behavior of the mentally impaired beneficiary. . . ." "The definition of Protective Supervision is to 'monitor the behavior' of nonself-directing, confused, mentally impaired persons. However, in this case, there is no monitoring of behavior required. The IHSS beneficiary has been completely bedridden for the last five years and has no use of either of his upper or lower extremities, which cannot be moved out of their fixed

---

[1]Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

positions. The claimant is seeking Protective Supervision to safeguard the beneficiary against catastrophic events such as a home fire. While such action may be warranted in light of his immobility and mental retardation, this type of 'safeguard' is not to monitor his behavior. Thus, it is not covered under the IHSS Program." Calderon's request for a rehearing was denied.

On May 18, 1993, Calderon filed a petition for writ of mandate and complaint for declaratory relief in the superior court, seeking to compel the Department to provide protective supervision services.[2] Calderon contended the Department abused its discretion because the medical evidence at the administrative hearing supported a finding he was non-self-directing and mentally impaired, in need of total care, and, therefore, eligible for such services. Calderon further contended he was entitled to protective supervision because he would be unable to summon assistance in the event of fire, environmental hazards, a need for water, or interference with his breathing. In support of his petition, Calderon submitted a copy of the administrative record, with medical information attachments, and a copy of MPP section 30-757.

In opposition, the Department argued the ALJ correctly determined Calderon was ineligible for protective supervision because the purpose of the service was to observe the behavior of, and protect, mentally impaired individuals who were inherently incapable of understanding everyday hazards and, therefore, put themselves at risk. Furthermore, the Department argued, medical evidence supported the conclusion that Calderon, because of his condition, was unable to engage in any type of behavior that could result in injury or hazard within the meaning of MPP section 30-757.17.

On March 25, 1994, the superior court heard argument, and on April 20, 1994, granted Calderon's petition after an independent evaluation of all the evidence. In a written statement of decision, the court determined the ALJ failed to properly consider the evidence of Calderon's severe mental disability, and that under *Marshall* v. *McMahon, supra,* 17 Cal.App.4th 1841, the only eligibility requirement for protective supervision services was that the IHSS beneficiary be non-self-directing. The court reasoned, in relevant part: "Petitioner has physical as well as mental impairments but, contrary to the ALJ's decision, '[a]pplicants lacking the ability to "self-direct" are eligible for protective supervision whether or not they have physical impairments. . . . [T]he regulations do not draw a bright line between those who are physically and those who are mentally incapacitated. The line is drawn

---

[2]On March 8, 1994, Calderon filed an amended petition for writ of mandate and deleted the cause of action for declaratory relief. The amended petition is the operative pleading in this case.

between those who have the practical capacity to know when they are in trouble and those who do not.' *Marshall,* 22 Cal.Rptr.2d at 228. Petitioner is mentally incapacitated and lacks the practical capacity to know when he is in trouble and therefore is eligible for protective supervision."

Judgment was filed on April 20, 1994, and entered on or about May 11, 1994, in favor of Calderon, setting aside the Department's May 19, 1992, decision, and ordering the Department to find Calderon eligible for protective supervision services.

On May 1, 1994, the Department filed a notice of appeal.

CONTENTIONS

The Department contends the trial court erred in determining Calderon was entitled to hours for protective supervision because its decision is not supported by the statutes, regulations, or case law governing the IHSS program.

DISCUSSION

*The Trial Court Erred in Granting Calderon's Petition for Writ of Mandate.*

a. *Standard of Review*

"The procedures in [Code of Civil Procedure] section 1094.5 are the means for judicially reviewing final decisions of administrative agencies. [Citation.]" (*Elizabeth D.* v. *Zolin* (1993) 21 Cal.App.4th 347, 353 [25 Cal.Rptr.2d 852].) " '[W]hen a trial court has made its own determination on all material facts and made findings using its own independent judgment . . . , it will be the trial court's findings and not those of the administrative agency that will be reviewed on appeal. [Fn. omitted.] [Citations.] The appellate court will only reverse the judgment of the superior court if it is based on an erroneous conclusion of law. [Citation.] When the facts do not conflict and the issues involve proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. [Citation.]' [Citation.]" (*Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 625 [232 Cal.Rptr. 50].)

We also acknowledge that the Department's interpretations of the statutes and regulations governing the IHSS program are entitled to great

weight and deference. (*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 176, 179-180 [70 Cal.Rptr. 407, 444 P.2d 79].) The courts have held that an agency's interpretation of its own regulations is the " 'ultimate criterion . . . which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " (*United States* v. *Larionoff* (1977) 431 U.S. 864, 872 [53 L.Ed.2d 48, 56, 97 S.Ct. 2150].) Similarly, our Supreme Court has held that ". . . a court may not substitute its independent judgment for that of the administrative agency on the facts or on the policy considerations involved." (*Credit Ins. Gen. Agents Assn.* v. *Payne* (1976) 16 Cal.3d 651, 657 [128 Cal.Rptr. 881, 547 P.2d 993].)

In light of these principles of law, we consider the trial court's ruling.

b. *Calderon Was Ineligible for Protective Supervision Services.*

■    We analyze Calderon's eligibility for protective supervision benefits by considering the legislative scheme (§ 12300 et seq.) and regulations (MPP, § 30-757.17) that provide this in-home support service, and their interpretation in *Marshall* v. *McMahon*, *supra*, 17 Cal.App.4th 1841.

"In 1973 the Legislature enacted the In-Home Supportive Services . . . program to enable aged, blind or disabled poor persons to avoid institutionalization by remaining in their homes with proper supportive services. (§ 12300 et seq.)" (*Marshall* v. *McMahon*, *supra*, 17 Cal.App.4th at p. 1844, fn. omitted; *Miller* v. *Woods* (1983) 148 Cal.App.3d 862, 867 [196 Cal.Rptr. 69].) "IHSS is an alternative to out-of-home care. Eligibility and services are limited by the availability of funds." (MPP, § 30-700.)

"The Department and its director are responsible for administering the IHSS program in compliance with state and federal laws. [Citations.] The Department promulgates regulations to implement the statutes [citations] while the county welfare departments administer the program under the state's general supervision. The county departments process applications for IHSS assistance [citations], determine the individual's needs and authorize services. [Citation.]" (*Miller* v. *Woods*, *supra*, 148 Cal.App.3d at p. 868; see also *County of Sacramento* v. *State of California* (1982) 134 Cal.App.3d 428, 430-431 [184 Cal.Rptr. 648].)

"The Legislature authorized a broad range of support services to eligible persons." (*Miller* v. *Woods*, *supra*, 148 Cal.App.3d at p. 868.) Section 12300, subdivision (b) provides: "Supportive services shall include domestic services and services related to domestic services, heavy cleaning, personal care

services, accompaniment by a provider when needed during necessary travel to health-related appointments or to alternative resource sites, yard hazard abatement, *protective supervision*, teaching and demonstration directed at reducing the need for other supportive services, and paramedical services which make it possible for the recipient to establish and maintain an independent living arrangement." (Italics added; see also MPP, § 30-757.)

In 1979, the Department established the protective services regulations (MPP, § 30-757), which provide, in relevant part: ".17 Protective supervision consisting of observing recipient behavior in order to safeguard the recipient against injury, hazard, or accident. [¶] .171 This service is available for monitoring the behavior of nonself-directing, confused, mentally impaired, or mentally ill persons, with the following exceptions: [¶] (a) Protective supervision does not include friendly visiting or other social activities. [¶] (b) Supervision is not available when the need is caused by a medical condition and the form of the supervision required is medical. [¶] (c) Supervision is not available in anticipation of a medical emergency. [¶] (d) Supervision is not available to prevent or control anti-social or aggressive recipient behavior. [¶] .172 Protective supervision is available under the following conditions: [¶] (a) Social service staff have determined that a twenty-four-hour need exists for protective supervision and that the recipient can remain at home safely if protective supervision is provided. [¶] (b) Services staff determine[s] that the entire twenty-four-hour need for protective supervision can be met through any of the following, or combination of the following: [¶] (1) IHSS [¶] (2) Alternative resources [¶] (3) A reassurance phone service when feasible and appropriate. [¶] .173 Services staff shall discuss with the recipient, or the recipient's guardian or conservator, the appropriateness of out-of-home care as an alternative to protective supervision."

The Department's regulations, and case law, define the purpose and form of protective supervision, which, in essence, determines the eligible recipients of this benefit. In *Miller* v. *Woods, supra,* 148 Cal.App.3d 862, the appellate court considered a challenge to a Department regulation that denied benefit payments to " 'housemates' " for protective supervision services they provided totally disabled persons. (*Id.* at p. 867.) While the issue under review in *Woods* is not germane to our analysis, the court's statement describing protective supervision is applicable to our discussion. The court said: " 'Protective supervision' services authorized by section 12300 are 'for monitoring the behavior of nonself-directing, confused, mentally impaired, or mentally ill persons . . . .' (MPP § 30-457.71.) Such services consist 'of observing recipient behavior in order to safeguard the recipient against injury, hazard, or accident.' (MPP § 30-457.7.) To be eligible for such

services, an individual must show 'that twenty-four hour need exists . . . and that the recipient can live at home safely if protective supervision is provided.' (MPP § 30-457.721.) [¶] Some recipients are old, suffering degenerative diseases. Others are young but retarded, epileptic, blind, brain damaged or schizophrenic. The recipients cannot protect themselves from injury. Some are self-destructive. For example, one autistic, blind and brain-damaged child lapses 'into seizures and temper tantrums . . . venting his frustrations by banging his head against a wall.' Others cannot control normal but potentially hazardous activities such as cooking or smoking a cigarette." (*Id.* at p. 869.)

In *Marshall* v. *McMahon, supra*, the appellate court determined protective supervision services could properly be limited to IHSS beneficiaries who were for any reason non-self-directing, in that they are unaware of their physical or mental problems and unable to watch out for themselves. (17 Cal.App.4th at pp. 1852-1853.) In reaching this conclusion, the court considered the purpose and use of the protective supervision service "in practical terms" and stated: "The regulations describe protective supervision as 'observing recipient behavior in order to safeguard the recipient against injury, hazard, or accident.' That description appears to be incomplete, however, because the person providing the care must necessarily be in a position to intervene in some manner to prevent harm when the disabled person engages in potentially dangerous conduct. [¶] . . . The Department defines protective supervision as filling the void of what persons cannot do: 'observe their own behavior.' The Department gives examples of the mentally impaired who are inherently incapable of understanding certain dangers, such as playing with matches, immersing electrical appliances in water, or wandering away from home. The court concluded protective supervision is 'the unskilled observation of non self-directing or otherwise mentally impaired persons who cannot observe their own behavior or surroundings and who are at risk of harm.' 'Protective supervision' appears to be similar to care given small children, that is, anticipating everyday hazards and intervening to avert harm." (*Id.* at pp. 1846-1847.)

The *Marshall* court also acknowledged that while the Legislature failed to specifically define the protective supervision service, " '[t]he [agency] is authorized to 'fill up the details' of the statutory scheme. [Citation.]' [Citation.]" (17 Cal.App.4th at p. 1848.) Accordingly, "[s]ince 1979 the Department has had limited eligibility for protective supervision on 'non self-directing, mentally ill or mentally infirm' persons irrespective of other infirmities. The Department asserts the restriction is logical because the physical needs of the recipient are met by the other services and protective supervision will not prevent a medical emergency. We agree. . . . [T]he

Department cannot provide all services for every need of every aged, blind or disabled person to enable that person to remain at home. It can only provide the enumerated services. The limitation of protective supervision to the 'non self-directing, mentally ill or mentally infirm' is reasonable because a nonskilled provider is able to supply the 'common sense' or missing cognitive skill to prevent harm from everyday hazards." (*Id.* at pp. 1848-1849.)

While *Marshall* determined that "non self-direction" was a requirement for protective supervision services, it was not the only criteria. That is where the trial court erred. *Marshall* also described protective supervision as involving not only the *observation* of behavior to safeguard the individual against harm, but also the intervention to prevent harm "when the disabled person *engages* in potentially dangerous conduct." (17 Cal.App.4th at p. 1846, italics added.) The Department described examples of "potentially dangerous conduct" as "playing with matches, immersing electrical appliances in water, or wandering away from home" (*id.* at p. 1846), "cooking or smoking a cigarette," and engaging in self-destructive behavior such as temper tantrums and head-banging against a wall. (*Miller* v. *Woods, supra,* 148 Cal.App.3d at p. 869.) These are examples of "active" participation in potentially dangerous activities. The purpose of protective supervision is to monitor active behavior in order to prevent harm from daily hazards. Accordingly, a proper interpretation of *Marshall* includes a finding that protective supervision is available for those IHSS beneficiaries who are non-self-directing, in that they are unaware of their physical or mental condition and, therefore, cannot protect themselves from injury, *and* who would most likely engage in potentially dangerous activities.

Calderon is "non-self-directing"; however, his physical condition makes it impossible for him to engage in any activities that would require observation or preventive intervention. While Calderon's medical condition is severe and his situation unfortunate, protective supervision is not available merely to provide constant oversight in anticipation of environmental or medical emergencies, or exigent circumstances. (See MPP, § 30-757.171(b), (c).) To pay someone to watch such a vulnerable person avoid danger from these events would be beneficial, but it does not fall within the scope of protective supervision and is not one of the services the statute provides. (See *Marshall,* v. *McMahon, supra,* 17 Cal.App.4th at p. 1852.)

To extend the definition of protective supervision to include individuals in Calderon's situation would be contrary to the manner in which the Department has interpreted the regulation and implemented this service, and to

legislative intent. While " ' "evidences of legislative intent [of unpassed bills] have little value" ' " (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 63 [152 Cal.Rptr. 153], as cited in *Marshall* v. *McMahon*, *supra*, 17 Cal.App.4th at p. 1849, fn. 6), we note that the failure of the Legislature to twice pass bills expanding the circumstances for eligibility for protective supervision likely indicates an "inference that the Legislature views the in-place regulations as consistent with [the Department's] mandate." (*Marshall* v. *McMahon*, *supra*, 17 Cal.App.4th at p. 1849.)[3]

The trial court's ruling was an impermissible expansion of the definition of protective supervision services. The Department's interpretation of MPP section 30-757.17, to support a finding Calderon was ineligible for protective supervision benefits, is supported by case law, and was neither erroneous nor inconsistent with the regulation. The trial court made no findings to the contrary. Accordingly, we find the trial court erred in granting Calderon's petition for writ of mandate.[4]

---

[3]In 1988 and 1989, the Legislature failed to pass bills defining "protective supervision" to include various types of life-support equipment. (*Marshall* v. *McMahon*, *supra*, 17 Cal.App.4th at p. 1849.)

"Senate Bill No. 1794 (Jan. 20, 1988) proposed section 12300 be amended to provide in relevant part: 'For purposes of this chapter, "protective supervision" includes, but is not limited to, monitoring the behavior or physical condition of mentally or physically disabled recipients, who by reason of physical or mental impairment, require the constant observation, continued presence, or immediate assistance of another person in order to safeguard the recipient against injury. . . . Persons in need of protective supervision shall include, but are not limited to, persons who by reason of a mental or physical impairment are unable to summon assistance themselves, are frequently or periodically in need of authorized paramedical care services or personal care services which must be provided in order to ensure their safety, or are in need of personal assistance or assistance with life support equipment periodically during a 24-hour period.'

"Senate Bill No. 376 (Feb. 6, 1989) contained identical text concerning protective supervision, with the exception of the last sentence providing: 'Persons in need of protective supervision shall include, but are not limited to, persons who by reason of a mental or physical impairment are unable to summon assistance themselves, or are frequently or periodically in need of paramedical or nonparamedical personal care services which must be provided on a 24-hour basis to ensure the recipients' safety.' " (17 Cal.App.4th at p. 1849, fn. 6.)

[4]Due to the basis of our ruling, we need not consider Calderon's additional contentions, that the Department's interpretation of MPP section 30-757.17 violates the Administrative Procedures Act, the Americans with Disabilities Act, and the equal protection clause of the state Constitution. However, we find, under the facts of this case, the Department's administrative interpretation of MPP section 30-757.17 is not considered an amendment to that regulation. (See *Aguilar* v. *Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 27 [285 Cal.Rptr. 515]; *Skyline Homes, Inc.* v. *Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 253 [211 Cal.Rptr. 792].) We additionally find the remaining contentions without merit

## DISPOSITION

The judgment is reversed and the peremptory writ of mandate is vacated. The trial court is directed to enter a new and different judgment denying the writ. The Department is to recover costs on appeal.

Klein, P. J., and Croskey, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 14, 1996.

---

because they have already been considered in *Marshall* v. *McMahon, supra,* 17 Cal.App.4th at pages 1851-1853.