Filed 3/15/21  Seth R. v. Lightbourne CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SETH R., | D077008 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00045021-CU-WM-CTL) |
| WILL LIGHTBOURNE, as Director of Department of Social Services, etc. | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Affirmed.

Charles Wolfinger, for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Richard T. Waldow, Gregory D. Brown and Julie T. Trinh, Deputy Attorneys General, for Defendant and Respondent.

Plaintiff Seth R. appeals from a judgment that denied him protective supervision benefits from the In-Home Supportive Services program (IHSS). Substantial evidence supports the court's ruling.  The court did not apply the law incorrectly, as plaintiff contends.  We affirm.

PROTECTIVE SUPERVISION BENEFITS OVERVIEW

IHSS is a program that provides in-home services to help elderly and disabled individuals remain safely in their homes.  (Welf. & Inst. Code,[1] § 12300 et seq.)  Respondent Director of the California Department of Social Services (Department) is responsible for overseeing IHSS in compliance with state and federal laws.  County social service departments administer the program under the Department's general supervision, process applications, and determine which supportive services a recipient needs.  (§ 12301.1; see § 12309; *Basden v. Wagner* (2010) 181 Cal.App.4th 929, 934 (*Basden*).)  The county has broad discretion in determining eligibility for public services, if the discretion is " 'exercised in a manner that is consistent with—and that furthers the objectives of—the state statutes.' "  (*McCormick v. County of Alameda* (2011) 193 Cal.App.4th 201, 210 (*McCormick*).)  Eligibility for IHSS benefits must be reassessed on an annual basis.  (Cal. Dept. Social Services, Manual of Policies and Procedures (MPP) §§ 30–761.13, 30–761.212; see *Norasingh v. Lightbourne* (2014) 229 Cal.App.4th 740, 754 (*Norasingh*).)

Protective supervision consists of "observing recipient behavior and intervening as appropriate in order to safeguard the recipient against injury, hazard or accident."  (MPP § 30–757.17; see *Marshall v. McMahon* (1993) 17 Cal.App.4th 1841, 1846–1847 (*Marshall*).)  Recipients are eligible only if they are "nonself-directing, confused, mentally impaired, or mentally ill" (MPP § 30–757.171), and if "[a]t the time of the initial assessment or reassessment, a need exists for twenty-four-hours-a-day of supervision in order for the recipient to remain at home safely" (MPP § 30–757.173(a)).  (See *Calderon v. Anderson* (1996) 45 Cal.App.4th 607, 614 (*Calderon*); *Norasingh, supra,* 229

---

[1]    Further statutory references are to the Welfare and Institutions Code unless otherwise specified.

Cal.App.4th at p. 745.)  The service is provided for recipients who "cannot protect themselves from injury.  Some are self-destructive.  . . .  Others cannot control normal but potentially hazardous activities such as cooking or smoking a cigarette." (*Miller v. Woods* (1983) 148 Cal.App.3d 862, 869 (*Miller*), disapproved on other grounds in *Noel v. Thrifty Payless* (2019) 7 Cal.5th 955, 986, fn. 15.)  Protective supervision is only for those mentally impaired persons "who are so unaware of their being and conduct as to require nonmedical oversight, akin to baby-sitting; . . . similar constant watchfulness of alert but otherwise endangered disabled people might be beneficial," but the Department is not required to provide protective supervision to those who are aware of their being and conduct. (*Marshall*, at p. 1853.)

## BACKGROUND

Seth has autism spectrum disorder, attention deficit hyperactivity disorder, and Klinefelter's syndrome.  He was first assessed for IHSS services in 2013, when he was 13 years old.  The county determined that he was not eligible for services, but, after Seth sought review in the superior court, the Department stipulated that he was eligible for protective supervision retroactively to 2013.  His mother (Mother), with whom he lives, has provided protective supervision services for Seth since then.

A county social worker conducted an annual reassessment in March 2017 and determined that Seth, who was then 17 years old, no longer needed protective supervision services.  The social worker found that Seth had some mental impairment, but was of sound mind, aware of his surroundings, and could carry on a conversation.  He had taught himself how to play guitar, had his own cell phone, was able to use it, and had never lost it.  Seth responded appropriately to questions about safety.  He said he would walk away and

3

report the incident if a stranger asked for his wallet. Seth went to school daily. He was in a general education class without a one-on-one aide. He made independent choices about his future. When asked about dangerous behaviors, Mother said only that Seth performed too many jumps when he went skateboarding, an independent activity. The social worker determined that overall, Seth was "self-directing and not at risk without protective supervision." His memory and orientation were not impaired, but his judgment was severely impaired. The county made a final assessment that Seth was self-directing and did not meet the criteria for protective supervision.

Seth requested an administrative hearing to challenge the decision. After conducting an administrative hearing and considering the voluminous evidence submitted by both parties, the administrative law judge (ALJ) issued a decision finding that Seth was independent and self-directing, was not likely to harm himself in the absence of protective supervision, and did not need protective supervision 24 hours per day. The Department adopted the ALJ's decision.

Seth filed a petition for writ of administrative mandamus, challenging the decision of the Department. After a hearing and independent review of the administrative record, the court found that the ALJ's factual findings were supported by substantial evidence, and her conclusions were reasonable in view of the broad statutory discretion conferred upon her. The court entered judgment in favor of the Department. Seth timely appealed.

DISCUSSION

I

STANDARD OF REVIEW

We review the trial court's factual findings for substantial evidence, resolving all conflicts in favor of the prevailing party. We accept the credibility determinations of the trial court and we do not reweigh the evidence. We affirm the court's order if substantial evidence in the record supports it, even if substantial evidence could have supported a contrary judgment. (*Norasingh, supra*, 229 Cal.App.4th at p. 753.) " 'We uphold the trial court's findings unless they so lack evidentiary support that they are unreasonable.' [Citation.]" (*Ibid*.)

We review issues of law de novo. (*Norasingh, supra*, 229 Cal.App.4th at p. 753.) An administrative agency's interpretation of its governing regulations is entitled to " 'great weight and deference,' " but is not dispositive. (*Ibid*.; *Calderon, supra*, 45 Cal.App.4th at pp. 612–613.) We are not bound by the trial court's interpretation of the law and regulations. (*Norasingh*, at p. 754; *Calderon*, at p. 612.)

The appellant bears the burden of demonstrating, based on the record, that the trial court committed an error that warrants reversal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Linton v. DeSoto Cab Company* (2017) 15 Cal.App.5th 1208, 1224 (*Linton*).) The appellant must establish that the error caused a miscarriage of justice, i.e. that it is reasonably probable that the appellant would have received a more favorable result in the absence of error. (*Linton*, at p. 1224.) We affirm the court's decision if any ground exists in the record supporting the court's conclusions. (*Taylor v. Elliot Turbomachinery, Inc.* (2009) 171 Cal.App.4th 564, 573, fn. 5.)

5

## II

## ASSESSMENT OF SETH'S MEMORY, ORIENTATION AND JUDGMENT

Seth first contends the court failed to comply with the law requiring the court to assess the degree of cognitive impairment in Seth's memory, orientation and judgment, as required by state regulation. (MPP § 30–756.372.) The ALJ discussed this requirement in her decision. She noted the social worker's 2017 assessment that Seth's memory and orientation were not impaired and his judgment was severely impaired. Seth's physician[2] stated that Seth had no deficiencies in his memory and orientation, and his judgment was severely impaired. The doctor explained that Seth had "mild Autism Spectrum Disorder with normal intellect but still substantially impaired social and adaptive skills . . . requiring consistent supervision for daily living and safety." The doctor was not aware of any injury or accident due to Seth's deficits in memory, orientation or judgment. He explained that Seth "has limited awareness for personal safety particularly with social awareness for victimization or being taken advantage of by others."

The level of impairment of Seth's memory, orientation and judgment were not disputed. The trial court did not specifically mention these categories, but we presume that the court knew and followed the law, in the absence of affirmative proof to the contrary. (Evid. Code, § 664; see *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 653–654 (*Winternitz*); *Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1269.) The court reviewed the record and found that the ALJ's findings, including Seth's degree of impairment of memory, orientation and judgment, were supported by substantial evidence. Seth has not shown any affirmative

---

[2] The physician's statement is relevant but not dispositive. (§ MPP 30-757.173(a)(3).)

evidence that the court failed to consider the degree of cognitive impairment in Seth's memory, orientation and judgment.

III

APPLICATION OF CORRECT LEGAL STANDARDS

Seth contends that the trial court applied the regulations incorrectly in two respects:  it failed to consider Seth's propensity for injury, hazard or accident if an adult were not always present; and it incorrectly interpreted the need for 24-hour supervision.

A.  *Absence of an Adult*

IHSS services are provided so that the elderly and disabled can remain safely in their homes alone.  "Supportive services shall include . . . protective supervision . . . which make[s] it possible for the recipient to establish and maintain an *independent* living arrangement."  (§ 12300, subd. (b), emphasis added; *Miller*, *supra*, 148 Cal.App.3d at p. 878.)

The record does not support Seth's contention that the court failed to consider Seth's propensity for injury, hazard or accident if an adult were not always present.  We presume that the court understood and followed the law in considering Seth's risk of causing injury, hazard or accident to himself if living by himself.  (*Winternitz*, *supra*, 235 Cal.App.4th at pp. 653–654.)

The primary present dangers to Seth were breaking bones from physical recreation and being taken advantage of by others asking for money.[3]  Both dangers result from independent, self-directed behavior.  They are not caused by the cognitive inability to control normal activities or by the lack of awareness of his being and conduct.  (See *Miller*, *supra*, 148 Cal.App.3d at p. 869; *Marshall*, *supra*, 17 Cal.App.4th at p. 1852.)  Further,

---

[3]    We agree with Seth that being taken advantage of by others is not anti-social behavior, as characterized by the ALJ.

Mother could protect Seth from rashly giving money away without being physically present because she controlled his money. Protective supervision did not prevent Seth's risky skateboarding. The ALJ also noted that Seth had no protective supervision while at school, or later in his vocational training.

Seth has not shown that the trial court assessed Seth's propensity for causing injury, hazard or accident to himself only when Seth had adult supervision. Seth has not rebutted the presumption that the court knew and followed the correct law. (*Winternitz, supra*, 235 Cal.App.4th at pp. 653–654.) Further, Seth has not shown how the decision would be any different if, as he claims, the court had assessed his needs in the absence of Mother. All the dangerous activities occurred while Seth was under protective supervision. Seth has the burden of showing error. (*Linton, supra*, 15 Cal.App.5th at p. 1224.) "[N[o error warrants reversal unless the appellant can show injury from the error." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286 (*City of Santa Maria*).)

B. *Interpretation of 24-Hour Supervision*

Seth also argues that the trial court misinterpreted the requirement of 24-hour supervision to mean that someone must be constantly intervening to prevent a person from engaging in potentially dangerous behaviors. He interprets "constant" to mean intervention, not observation. Seth has provided neither legal analysis nor citation to the record supporting this claim. His single record citation is to a portion of the ALJ's decision in which she stated that Seth had not shown the need for 24-hour supervision because he had no individual supervision while at school; he did not have constant supervision at his vocational program; and he was able to stay safely at home alone for short periods of time. We may and do "disregard conclusory

arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria*, *supra*, 211 Cal.App.4th at p. 287.)

IV

NONSELF-DIRECTING

Seth claims the court erred as a matter of law because it required that he be nonself-directing to receive protective supervision. Seth contends that this is not a separate, stand-alone requirement for protective supervision services. He argues that because the Department's regulations provide protective supervision services for "nonself-directing, confused, mentally impaired, *or* mentally ill persons only" (MPP § 30-757.17, emphasis added), a person with any one of those characteristics is eligible for protective supervision. He contends, as a corollary, that the trial court followed an "unlawful, underground" county regulation in determining that being nonself-directed was a separate requirement.

The requirement that a recipient be nonself-directing was added by case law that the trial court, and we, follow. (See *Marshall*, *supra*, 17 Cal.App.4th at p. 1852; *Calderon*, *supra*, 45 Cal.App.4th at p. 616.)

"Nonself-directing" people are those who are not aware of their physical or mental problems and who ordinarily cannot discern the risks or dangers of their behavior. (*Marshall*, *supra*, 17 Cal.App.4th at p. 1852.) They cannot protect themselves from harm, either because they are self-destructive or they lack the cognitive ability to understand and avoid normal potential hazards, such as "playing with matches, immersing electrical appliances in water, or wandering away from home." (*Id*. at pp. 1846–1847; *Miller*, *supra*, 148 Cal.App.3d at p. 869.) Protective supervision is for those so lacking in situational and self-awareness that they cannot keep themselves safe in a

9

home unattended. We stated in *Marshall* that "it is permissible to limit the in-home supportive service denoted as 'protective supervision' to only those disabled people who are so unaware of their being and conduct as to require nonmedical oversight." (*Marshall*, at p. 1853.) The court in *Calderon* ruled that being mentally impaired, even severely impaired, was not sufficient in itself to warrant protective supervision. (*Calderon*, *supra*, 45 Cal.App.4th at p. 616.) The court denied protective services to an adult who had the cognitive ability of a one year old, but was not able to harm himself if left alone because he was bedridden and could not move his head, arms or legs. (*Id*. at pp. 610 [facts], 616–617 [ruling].) The *Calderon* court stated that "protective supervision is available for those IHSS beneficiaries who are non-self-directing, in that they are unaware of their physical or mental condition and, therefore, cannot protect themselves from injury, *and* who would most likely engage in potentially dangerous activities." (*Id*. at p. 616.) The court here had to look beyond Seth's admitted mental impairments to determine if he was so unaware of himself that he would be unable to protect himself from self-harm, i.e., if he were nonself-directing. (*Marshall*, at p. 1853; *Calderon*, at p. 616.)

The trial court followed the law as stated in *Marshall* and *Calderon*. It interpreted those cases independently and concluded that "both of these cases held that nonself-direction is a requirement for supervision services," citing *Marshall*, *supra*, 17 Cal.App.4th at p. 1843, and *Calderon*, *supra*, 45 Cal.App.4th at p. 616. The All-County Letter (ACL) No. 15-25 similarly states that its policy that a recipient had to be nonself-directing to be eligible for protective supervision services was based on the court rulings in *Marshall* and *Calderon*. Upon de novo review, we agree with the interpretation of *Marshall* and *Calderon* by both the trial court and the Department. Seth had

to be nonself-directing to be eligible for protective supervision services. (*Marshall*, at p. 1843; *Calderon*, at p. 616.)

V

SUBSTANTIAL EVIDENCE SUPPORTS THE COURT'S DECISION

Seth contends that the trial court's decision, and the ALJ's decision on which it is based, were not supported by substantial evidence.

The court applied the correct standards when reviewing the administrative record. It stated that it could accord a strong presumption of correctness to the administrative findings, but it was required to exercise its independent judgment on the facts and the law. (*LaGrone v. City of Oakland* (2011) 202 Cal.App.4th 932, 940; *Norasingh*, *supra*, 229 Cal.App.4th at p. 752.) The court reviewed the evidence in the administrative record and determined, in its independent judgment, that the ALJ's "findings were supported by substantial evidence, and . . . her conclusions were reasonable in view of the broad statutory discretion conferred upon her." We review the court's factual decision for substantial evidence. (*Norasingh*, *supra*, 229 Cal.App.4th at p. 753.)

Seth argues that the Department did not show a change in his mental impairments from 2013, when protective supervision was approved, until 2017, when protective supervision was terminated. The record does not contain facts showing why Seth was eligible for protective supervision in 2013. The assessment in 2013 was that he did not need protective services. The Department's stipulation to resolve the legal proceedings did not contain a factual basis for the protective services.

In any event, past benefits are relevant when reassessing need, but eligibility and need at the time of reassessment are dispositive. (*Norasingh*, *supra*, 229 Cal.App.4th at pp. 754–755.) There would be no need for

11

reassessment if people's abilities and needs did not change over time, including people with mental impairments. (See MPP §§ 30–761.13, 30–761.212 [yearly reassessments required].)

The court determined that the ALJ's denial of protective supervision services was supported by substantial evidence. The ALJ found that Seth was self-directing because he made independent judgments, such as graduating from high school, attending a vocational program, and choosing not to take medication that inhibited his interactions with others. He wanted to live independently and knew the steps necessary to accomplish that goal.

The present dangers to Seth were the result of self-directing behavior. When asked about Seth's potentially dangerous actions, Mother said only that he jumped off stairs too much when skateboarding. Mother said Seth would let strangers into the house because he was very trusting. Seth had a tendency to be taken advantage of in social situations.[4] He would freely give money to acquaintances who asked for it. Seth's long-term doctor said that he was not aware of any injury or accident that Seth had suffered due to impaired memory, orientation, or judgment. The doctor said that the primary danger that Seth faced as a result of his mental impairments was his lack of "social awareness for victimization or being taken advantage of by others."

The ALJ found no evidence of dangers caused by nonself-directing behavior. She found unsubstantiated Mother's claim that Seth had inadvertently started fires and burned pots in the kitchen, because Mother did not report these actions when the social worker asked her about dangers in 2017. Also, there were many inconsistencies in Mother's testimony.

---

[4] We agree with Seth that being taken advantage of by others is not anti-social behavior, as characterized by the ALJ.

Mother said that she was encouraging Seth to learn to drive, but that would be far more dangerous than using a stove and microwave. Mother said that Seth's use of the computer was limited, but she also told the neuropsychologist that she had to intervene to prevent Seth from sending money to an online acquaintance. She feared he would get lost or disoriented if he left the house on his own, but said that he rarely left the house on his own initiative. There was no evidence that Seth had ever wandered away from home and gotten lost. Finally, Mother claimed that Seth was always supervised by professionals when he was not with her, but she also said that Seth had sex with his girlfriend outside the vocational training facility, indicating that he was not closely supervised there.

Seth contends the court did not consider evidence that Seth started fires in the kitchen while trying to cook; ate plastic; and was raped by a neighbor boy. These all occurred when Seth was 13 or younger. Mother said in 2013 that Seth had started a fire in the microwave and he chewed on plastic cups when drinking from them. When he was 11 years old, Seth was raped by a neighbor boy he thought was a friend. There was no evidence that these behaviors were still occurring when Seth was 17. As noted by the social worker, Mother did not mention these dangers when asked in 2017 how Seth was a danger to himself. Seth argues that he could wander off and get lost, but there were no incidents of his wandering away from home or school. The only recent danger described by Mother was opening the door to a stranger. This danger, however, was the result of self-directing behavior and did not create eligibility for protective supervision.

Seth claims that the ALJ discounted Mother's testimony. There were many inconsistencies in Mother's testimony that the ALJ pointed out.

13

Credibility of the witnesses is a matter for the trier of fact to decide, and we do not reweigh those judgments. (*Norasingh*, *supra*, 229 Cal.App.4th at p. 753.)

Substantial evidence supports the trial court's determination that Seth did not need protective supervision 24 hours per day to prevent him from causing injury, harm or accident to himself due to his mental impairments. Seth made independent decisions, was aware of himself and his surroundings, had control over normal activities, and thus was not likely to cause injury, hazard or accident to himself as a result of his mental impairments. (*Norasingh*, *supra*, 229 Cal.App.4th at p. 753.) Seth has not borne his burden of showing that the court's findings, based on its review of the administrative record, were contrary to the weight of the evidence or lacking in evidentiary support. (*Id*. at p. 752.)

## DISPOSITION

The judgment is affirmed. Costs to be awarded to respondent.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

14