Filed 3/24/25  Karraa v. City of Los Angeles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANTON KARRAA et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF LOS ANGELES et al.,<br><br>Defendants and Respondents. | B330900<br><br>(Los Angeles County<br>Super. Ct. No. 20STCP04014) |

APPEAL from an order of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Law Offices of Raymond N. Haynes and Raymond N. Haynes for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Valerie L. Flores, Chief Deputy City Attorney, John W. Heath, Assistant City Attorney, Donna L. Wong and Kenneth T. Fong, Deputy City Attorneys for Defendant and Respondent City of Los Angeles.

No appearance for Defendant and Respondent Outfront Media, LLC.

_____

Plaintiffs and appellants Anton Karraa, Rabadi Service Station, Inc., J. Keith Stephens, and Virtual Media, Inc. filed a verified complaint for a writ of mandate against defendants and respondents City of Los Angeles (the City) and Outfront Media, LLC.  Plaintiffs sought to compel the City to issue a permit allowing them to reconstruct a billboard on their property.  The billboard at issue belonged to defendant Outfront, who demolished it when license negotiations with plaintiffs failed and plaintiffs terminated its license.  The trial court held an evidentiary hearing, made findings of fact, and dismissed the City from the action.  The suit continues against Outfront.  The dismissal of the sole cause of action against the City is appealable.  (*Rocca v. Steinmetz* (1922) 189 Cal. 426, 428.)[1]  We affirm.

I.      ***The Allegations of the Complaint***

Anton Karraa is the president of Rabadi Service Station, Inc. (Rabadi), which owns and operates an Exxon Mobil gas station at 6301 Santa Monica Boulevard in Los Angeles.  J. Keith Stephens is the president of Virtual Media, Inc. (Virtual), an outdoor advertising company which develops, owns and operates

---

[1]      The record on appeal does not include a judgment and the parties have advised us the trial court has not issued one, despite their request.  The trial court's order resolved all claims between plaintiffs and the City.  An order granting or denying a petition for writ of mandate that disposes of all claims between the parties may be treated as an appealable final judgment.  (*City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 190, overruled on another ground by *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 657, 663, fn. 14 [an order or ruling may constitute a final judgment for the purpose of preserving the right to appeal].)

billboards in Los Angeles. Defendant Outfront Media, LLC (Outfront) is a California limited liability company also engaged in the business of outdoor advertising in Los Angeles. Until September 1, 2019, Outfront operated a billboard at plaintiffs' gas station pursuant to a written license.

The complaint alleges that the City is governed by a series of ordinances regulating construction and operation of all signs. Since at least 2002, the City, through these ordinances, has "purported to prohibit" all new off-site signs, more commonly known as billboards. The complaint refers to the ordinances as the "Sign Ban." It alleges that, despite the ordinances, the City has permitted many newly constructed billboards based on numerous exceptions to the Sign Ban. The complaint alleges that an outdoor advertising company in Los Angeles typically earns between $30,000 and $50,000 per month from a single billboard site, yet pays only $500 per month to the owner of the site. As happened here, if the owner of the site seeks fair market value for the billboard leases, the outdoor advertising company will typically remove and relocate the billboard instead of negotiating in good faith. As a result, the owner of the site finds itself without power to raise rents to fair market value.

Outfront's billboard at the site of the Rabadi gas station has been in existence for more than two decades. With the license about to expire around August 31, 2019, Rabadi sought a rent increase. Outfront refused to negotiate "because they have thousands of [b]illboards in the City and hundreds of thousand[s] around the county."

Karraa and Rabadi then negotiated a new deal with plaintiffs Stephens and his company, Virtual, a different and smaller billboard company. When Outfront learned of the

3

agreement with Virtual, "Outfront told Rabadi unambiguously that if [it] did not renege on [its] agreement with Virtual and to a far lower rent, they would punish [it] by removing the large steel pole that supported the [billboard] for more than two decades and seek to prevent any other [b]illboard from ever being operated at the Service Station Property."

Supporting the billboard at issue is a steel column which is "generally not reusable" and has a scrap value between $5,000 and $7,500. Virtual offered to buy the steel pole for $180,000 which would have saved Outfront the cost of removal ($20,000 to $30,000). However, Outfront ignored the offer and instead applied to the City for a permit to remove the existing pole and billboard. The complaint alleges that Karraa and Rabadi were not informed of Outfront's application to demolish the billboard and they did not consent to it. Karraa objected by calling and writing the City. He informed the City that the owner of the real property had not consented to issuance of a demolition permit. The complaint also noted that obtaining a building permit without the consent of the property owner is a misdemeanor in violation of section 91.103.2 of the Los Angeles Municipal Code.

The City issued the demolition permit without responding to Karraa and Rabadi. Karraa again called the City to object and wrote to the City's building department to demand cancellation of the permit. The City did not respond.

With its lease expired and having obtained the demolition permit, Outfront removed the above-ground portion of the billboard. Plaintiffs then filed a permit application to "replace" the above-ground pole or column removed by Outfront. The City denied the permit on the ground that the Sign Ban prohibited new billboard construction. Plaintiffs filed an administrative

4

appeal with the City's Board of Building and Safety Commissioners (BBSC). As of the filing of their complaint, plaintiffs had heard nothing concerning their administrative appeal.

The complaint describes the construction and demolition of a billboard: "The standard monopole [b]illboard is constructed with a single steel column generally measuring approximately five feet in diameter and 50 to 60 feet long. Ordinarily, the [b]illboard is installed by auguring a hole seven to eight feet in diameter and at least 30 to 40 feet deep. The steel column is then lowered by crane into the hole and filled with cement. This leaves the remainder of the column above ground and generally allowing for the display frame or 'superstructure' to be bolted to the above ground portion of the column."

A very substantial portion of a billboard is generally underground and unseen to ensure the stability of the entire structure in terms of wind shear and geological forces. The below-grade portion costs approximately $250,000 to $300,000 to install and the above-grade portion costs approximately $150,000 to $200,000 to install. Thus, replacing the above-grade portion would not exceed 50 percent of the total replacement cost of the billboard.

Under section 91.6216.4, "Alterations, Repairs or Rehabilitation" of a billboard are allowed as long as the cost of the work does not exceed 50 percent of the "replacement cost of both the sign and sign support structure." (§ 91.6216.4.2)

Virtual submitted an application to "alter, repair or rehabilitate" the billboard. Even though the cost of the work was less than 50 percent of the replacement cost of the sign and sign support structure, Virtual's application was denied.

5

The verified complaint, filed December 7, 2020, alleges four causes of action. The first cause of action seeks a writ of mandate directing the City to issue billboard permits only with the consent of the property owner. It also seeks to have the City ordered to issue a billboard permit to Karraa and Rabadi. The other three causes of action for violations of Business and Professions Code section 17200 et seq. [unfair business practices], waste, and private nuisance involve Outfront only.

## II. *The Administrative Appeal*

By the time the court presided over the trial of the cause of action against the City, plaintiffs' administrative appeal to the BBSC had been adjudicated. The BBSC stated the issues on appeal: 1) whether the City abused its discretion in issuing a demolition permit to Outfront when the City knew the owner of the property had not consented to the demolition; and 2) whether the City acted properly pursuant to sections 91.6216.4.2 and 91.6216.4.3 when it denied plaintiffs a permit to reconstruct the demolished sign by using the portion of the steel pole left underground. On December 9, 2021, the BBSC denied plaintiffs' appeal, finding that the City had "properly complied with all regulations and policies."

## III. *Pertinent Los Angeles Municipal Code Sections*

We list the Los Angeles Municipal Code sections that apply to this case.

- **§ 91.6216.4 Alterations, Repairs or Rehabilitation**

- **§ 91.6216.4.1** Alterations, repairs or rehabilitation of any existing sign and/or support structure may be of the same

6

type of construction as the existing sign or sign support structure provided:

1. The aggregate value of the work in any one year does not exceed 10 percent of the replacement cost of both the sign and sign support structure; and

2. That there is no increase in sign area or height and no change in the location or orientation of the sign.

- **§ 91.6216.4.2** Alterations, repairs or rehabilitation of existing sign and/or sign support structures in excess of 10 percent of the replacement cost of both the sign and sign support structure may be made provided:

  1. That the cost of the work does not exceed 50 percent of the replacement cost of both the sign and sign support structure; and

  2. That there is no increase in the sign area or height and no change in the location or orientation of the sign; and

  3. All new construction shall be as required for a new sign of the same type.

- **§ 91.6216.4.3** Alterations, repairs or rehabilitation of existing sign and/or sign support structures that exceed 50 percent of the replacement cost of both the sign and sign support structure shall comply with all the requirements of this Code.

- **Article 4.4 Sign Regulations**

- **§ 14.4.2 Off-Site Sign.** A sign that displays any message elsewhere than on the premises where the sign is located.

7

- **§ 14.4.2 Off-Site Sign Structure.** A structure of any kind or character, erected, used or maintained for an off-site sign or signs, upon which any poster, bill, printing, painting, projected image or other advertisement may be placed.

IV. *The Trial Court's Rulings*

The trial court basically found true most of the factual (as opposed to conclusory) allegations of the complaint except for the allegation that when the City issued the demolition permit, it was aware it did not have Karraa's consent. The court noted a conflict in the evidence about communications between Karraa and Rabadi, on the one hand, and the Los Angeles Department of Building Safety (LADBS), on the other. According to the trial court, the administrative record includes a notarized letter dated August 20, 2019 signed by Karraa states that Karraa does not consent to the issuance of a demolition permit. A declaration by Virtual's president J. Keith Stephens states that he called LADBS on August 20, 2019, and spoke to Sam Chang at LADBS, who said the City required the permission of the property owner for a demolition permit and he would investigate the matter.

The trial court took note of testimony at the BBSC hearing on December 7, 2021. Hector Buitrago of LADBS testified that no one at LADBS had seen the August 20, 2019 letter signed by Karraa. LADBS's presentation included a representation that the August 20, 2019 letter was received by LADBS on October 29, 2021. LADBS's presentation also included a statement by Sam Chang, a 22-year employee of LADBS, that he did not recall having a conversation with Stephens and, until the BBSC hearing, was unaware of the issues surrounding the billboard at issue. The court noted plaintiffs took no legal action to enjoin the

8

demolition of the billboard once they learned that the permit had been issued.

At the December 7, 2021 hearing, Buitrago also explained that the pipe supporting the billboard was cut off at the grade level and, as was common practice, the underground portion was allowed to stay in place:

> "Now removing the concrete and the steel pipe would require, you know, significant excavation. It would be considerably more work and especially if it occurs near buildings, near property lines. You know, there's a chance for—for damage. So in most cases applicants as well as the department are perfectly okay with leaving this structure underground. Because it really causes no harm. It makes no difference, and removing it would be very expensive and very disruptive to—to the business. So in part for safety reasons LADBS customarily and for many years has accepted this as—as a method for demolition of billboards."

As is usually the case, a steel plate required by the City was welded on top of the open pipe.

At trial, plaintiffs identified two issues for the trial court to decide at trial: whether the City "violated mandatory duties by: 1. Refusing to issue a building permit to allow Plaintiffs to repair the damage done to . . . the above ground portions of the Subject Billboard; and 2. Issuing a demolition permit to Outfront to allow it to dismantle the above ground section, despite the objections of the owner of the real property."

9

On May 2, 2023, the trial court issued its ruling. It noted that the complaint raised purely legal issues of statutory construction which would be decided de novo.

The court noted the Sign Ban, the general rule against off-site advertising signs set out in section 14.4.4.B.11. The prohibition is as to "off-site signs." "[A]lterations" that conform to the provisions of section 91.6216 are specifically exempted from the prohibition of off-site signs. (§ 14.4.4.B.11(a).)

The court found that sections 91.6216.4.1 and 91.6216.4.2 both refer to "*existing* sign" and/or sign "support structure." (§§ 91.6216.4.1, 91.6216.4.2, italics added.) The above-ground portion of the billboard was demolished on October 29, 2019. Thus, neither the sign nor the above-ground support structure existed when appellants filed their application for a permit on January 23, 2020. In reaching this conclusion, the court took account of section 14.4.2 which defines an off-site sign structure as a structure of any kind "upon which any poster, bill, printing, painting, projected image or other advertisement may be placed." (§ 14.4.2.) The court noted that the below-grade portion of the original steel pipe had been sealed off with a plate, making it impossible to place any "poster, bill, printing, painting, projected image or other advertisement" on the below-ground steel pipe. Because there was no existing sign or support structure to "alter, repair or rehabilitate," the court found sections 91.6216.4.1 and 91.6216.4.2 inapplicable.

The court also found that leaving the below-grade portion of the pipe in place was a long-standing policy of LADBS which had never before been challenged. If the below-grade components could be considered subject to "rehabilitation" pursuant to section 91.6216.4, then any off-site billboard removed pursuant to

10

LADBS's practice would never truly be considered demolished. The policy behind the Sign Ban would not be effectuated. The court found the City's position that the below-grade pipe was not subject to "rehabilitation" consistent with the policy of prohibiting new billboards.

The trial court agreed with the City that invalidation of the demolition permit would have no practical effect, rendering appellants' second contention moot. As for the contention that issuing a demolition permit without the property owner's consent is a crime, the court was not in a position to issue "practical relief" since Outfront was not a party to the cause of action for a writ of mandate. The mandate petition seeking an order compelling the City to issue permits only when the property owner consented was therefore denied.

## DISCUSSION

I. ***The Standard of Review Requires That We Accord the Agency's Interpretation of the Regulation Great Weight***

On appeal, plaintiffs present issues of law only. The primary issue is whether section 91.6216.4.2 could be invoked to support "[a]lterations, repairs or rehabilitation" once Outfront had demolished the above-ground portion of the billboard. This requires an interpretation of section 91.6216.4.2 and other provisions of the Los Angeles Municipal Code. We review questions of law de novo. (*Duncan v. Department of Personnel Administration* (2000) 77 Cal.App.4th 1166, 1174; *Poliak v. Board of Psychology* (1997) 55 Cal.App.4th 342, 348 [review of proper interpretation of statute requires independent judgment];

11

see generally 9 Witkin, Cal. Procedure (6th ed. 2021) Administrative Proceedings, § 137, pp. 1243–1244.)

In denying plaintiffs' application, LADBS and the BBSC were interpreting regulations that govern their actions. While the Los Angeles Municipal Code is not a regulation enacted and promulgated by LADBS and BBSC, the provisions at issue apply to the work these agencies perform.

An agency's interpretation of its own regulations is entitled to great weight and deference unless the interpretation is plainly erroneous or inconsistent with (other) regulations. (*Calderon v. Anderson* (1996) 45 Cal.App.4th 607, 613.) A court may not substitute its independent judgment for that of the agency on the facts or the policy considerations involved. (*Ibid.*)

"Whether judicial deference to an agency's interpretation is appropriate and, if so, its extent—the 'weight' it should be given—is thus fundamentally *situational*." (*Yamaha Corp. of America v. State Bd. Of Equalization* (1998) 19 Cal.4th 1, 12.) There are two categories of factors to consider in giving weight to an agency's interpretation. The first category includes agency experience and technical knowledge. The second group consists of evidence that the agency has consistently maintained the interpretation in question. (*Ibid.*)

Both of these categories are satisfied in this case. The decision to leave the below-grade portion of the steel column in place required both technical knowledge and experience. Given that the remainder of the steel column is encased in concrete, Buitrago's description of the difficulties in removing the below-grade portion of the steel column displays both expertise and knowledge. And the evidence was that LADBS had followed this practice for a long time and it had never been questioned.

Thus, we accord LADBS's interpretation of section 91.6216.4 great weight.

II.  ***The Trial Court Correctly Interpreted Section 91.6216.4 to Preclude Replacement of a Demolished Sign with a New Sign***

We are enjoined to give statutes a plain and common sense interpretation.  (*People v. Valladoli* (1996) 13 Cal.4th 590, 597; see generally 7 Witkin, Summary of Cal. Law (11th ed. 2017) Constitutional Law, § 130, p. 240.)  With this in mind, we begin with the prohibition of signs generally (§ 14.4.4.B.11) and the fact that section 91.6216.4 is entitled "Alterations, Repairs or Rehabilitation."

On the one hand, the prohibition of new signs is as clear a policy choice as can be.  There must be no new signs.  On the other hand, existing signs should be kept in good repair.  And it should be possible to update existing signs with new technology.  Taken in tandem, these choices prohibit erection of brand new signs, which is exactly what plaintiffs propose to do.

Plaintiffs contend nothing prevents the City from issuing a "permit to repair a damaged billboard."  The defect in this argument is that plaintiffs characterize the demolition of the billboard as "damage."  Rather, the billboard, together with the above-grade steel column, is entirely missing.  It is therefore a nonstarter to contend that the billboard could be "repaired for less than 50 percent of its replacement cost."  There simply is no billboard to "repair."

It is not true that the "sole criteria as to whether a permit will issue for 'alterations, repairs or rehabilitation' of a sign is whether it will cost more than 50 percent of 'the replacement cost of both the sign and [the] sign support structure.' "  For the

13

50 percent rule to apply, there has to be an existing billboard. There is none here to alter, repair or rehabilitate.  The trial court correctly interpreted the statute.

Plaintiffs propose to install a new billboard rather than to repair an existing billboard.  However, because the underground part of the steel support pipe is still there, plaintiffs contend they are "repairing" the billboard.  We turn to this next.

III.   *The Underground Steel Pipe No Longer Functions as a Sign Support Structure*

Plaintiffs contend the below-grade steel pipe, encased in concrete, is part of the superstructure of the billboard.  That was certainly the case when there was a billboard to support. However, that is no longer true.

We begin by noting there are good reasons to leave the below-grade or underground portion of the steel pipe in place, as the City's Buitrago explained.  The steel pipe is encased in concrete.  Removal would endanger existing property, be expensive, and require a lot of work.  Perhaps most important, there is no good reason to do so.  Consequently, the underground steel pipe remains underground.

LADBS ascribes no legal significance to the underground steel pipe.  That is, it does not apply section 91.6216.4 to the underground steel pipe.  An agency's interpretation of its own regulations is entitled to great weight unless the interpretation is plainly erroneous or inconsistent with other regulations. (*Calderon v. Anderson*, *supra*, 45 Cal.App.4th at p. 613.)

There are two reasons why the City's interpretation is neither erroneous nor inconsistent with other regulations.

First, sections 91.6216.4.1 and 91.6216.4.2 both speak of alterations, repairs or rehabilitation of "*existing* sign" and/or sign

14

"support structure."  (§§ 91.6216.4.1, 91.6216.4.2, italics added.)
There is now neither a sign nor a sign support structure that is
above-ground.  The underground steel pipe does not support a
billboard.  The steel pipe serves no function as a sign support
structure and is now simply a steel pipe encased underground in
concrete.

Second, section 14.4.2 defines an off-site sign structure as a
"structure of any kind or character, erected, used or maintained
for an off-site sign or signs, upon which any poster, bill, printing,
painting, projected image or other advertisement may be placed."
(§ 14.4.2.)  The top of the underground steel pipe is now topped
off with a steel plate to prevent accidents.  No "poster, bill,
printing, painting, [or] projected image" could be affixed to it.
The underground steel pipe is therefore not an "off-site sign
structure.

The City's interpretation of section 91.6216.4 is not "plainly
erroneous."  On the contrary, the City correctly interpreted
section 91.6216.4 as inapplicable to the underground steel pipe.
This interpretation is consistent with section 14.4.4.B.11 which
generally prohibits the installation of new off-site signs.  The trial
court did not err in adopting the City's interpretation.  Whatever
the relationship between plaintiffs and Outfront, the existing
statutory framework precludes erection of the new billboard
proposed by plaintiffs.  The issuance of a permit to plaintiffs to
construct a billboard would have been demonstrably incorrect.

Finally, we also agree with the trial court that invalidating
the demolition permit is a moot proposition since the demolition
can hardly be undone.  (*In re D.P.* (2023) 14 Cal.5th 266, 276
[a case becomes moot when events render it impossible for a court
to grant any effective relief].)

15

## DISPOSITION

The order is affirmed.  The City of Los Angles is to recover its costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.